[No. 14044. Department One. · August 14, 1917.]

J. L. LARSON, *Respondent*, v. GEORGE B. DEERING *et al.*, *Appellants.*[1]

PRINCIPAL AND SURETY—OFFICIAL BOND—JUDGMENT AGAINST PRINCIPAL. A judgment against a sheriff for a wrongful levy is not conclusive upon the sureties upon his official bond conditioned merely for the faithful discharge of the sheriff's duties, but is no more than *prima facie* of the merits in a subsequent case against the sureties, casting the burden of proof upon them.

SAME—ACTIONS—OFFICIAL BONDS—DEFENSES OF SURETY. In an action upon a sheriff's official bond to collect a judgment recovered against the sheriff for a wrongful levy, the sureties' answer setting up the lawfulness of the sheriff's acts states a good defense as to the sureties.

Appeal from a judgment of the superior court for King county, Smith, J., entered September 25, 1916, upon findings in favor of the plaintiff, in an action on an official bond, tried to the court. Reversed.

*C. B. White* and *W. ·P. Bell* (*Bogle, Graves, Merritt & Bogle,* of counsel), for appellants.

*Jay C. Allen* (*Ernest R. Wilkins*, of counsel), for respondent.

CHADWICK, J.—Appellant Deering was the sheriff of Snohomish county. Appellant surety company was surety upon his official bond. Respondent Larson's assignor obtained a judgment against Deering as sheriff for damages by reason of a wrongful levy. The surety company was not joined as a party to the action. The judgment being unsatisfied, respondent brought this action against Deering and the surety company, setting up the official character of Deering, his bond and the obligation of the surety company, which is in the language of the statute (Rem. Code, §§ 3985, 8325), binding the principal to "faithfully discharge all the duties

[1]Reported in 166 Pac. 1119.

of his said office according to any law now in force, or which shall hereinafter be enacted," the judgment, and the fact that it has not been paid, and prayed for judgment in the sum previously adjudged to be due from Deering, with interest and costs. Defendants (appellants) demurred to this complaint upon the grounds that the court had no jurisdiction over the person of Deering; that the court had no jurisdiction over the subject-matter; and that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled. Exceptions were taken by each of the appellants. Deering stood upon his demurrer. The surety company answered, admitting the official character of Deering and the giving of the bond, but denied that the bond was legally effective to bind it to the payment of the judgment. Further answering, the surety company set up, by way of affirmative defense, that Deering had been without fault in the act complained of in the original suit; that the property levied upon had been regularly seized and sold as provided in the statutes; that he had fully accounted for the proceeds of the sale; that Deering had not defended the original action in good faith, and carelessly, negligently, and in fraud of the rights of the surety company had allowed a judgment to be obtained; that the judgment was obtained through a mistake of facts, and contrary to the facts that should have been proven and the law governing; that Deering fraudulently, carelessly, and negligently failed and refused to appeal from said judgment; that it was not given notice of the pendency of the action, and had no notice or opportunity to defend, and had no notice of the judgment until the commencement of this present proceeding.

A demurrer to the affirmative answer was interposed and sustained. Appellant surety company stood upon its answer. The case went to trial. The judgment roll in the action against Deering was offered, the assignment of the judgment was proved, and after a motion for nonsuit had

been overruled, judgment was entered in favor of the respondent.

It will be seen that the legal effect of the court's rulings upon the demurrer and the entry of the judgment is to bind a surety on an official bond to the payment of the judgment, upon formal proof of a judgment theretofore entered against the principal, and without notice to the surety.

Counsel for respondent admit, as text writers affirm, that the authorities are irreconcilably in conflict, but barring a very few cases, the conflict is more apparent than real. There are cases holding that a judgment against a principal on his official bond is no evidence at all against the surety unless the bond upon its face contains a stipulation that the surety will be bound by a judgment rendered against the principal. It was so held in *Pico v. Webster*, 14 Cal. 202, 73 Am. Dec. 647, but it will be noticed that the court drew a distinction between an engagement to pay in any event and an engagement to answer for the faithful performance of official duty. This case, as well as others fashioned in the same form, really turns upon the wording of the bond.

So, too, there are cases holding that the judgment against the principal is conclusive upon the sureties although the sureties were not made parties to the suit and had no notice of it. This doctrine has never been applied in all its vigor outside of the state of Pennsylvania, and it is upon *Masser v. Strickland*, 17 Serg. & Rawle (Penn.) 354, 17 Am. Dec. 668, that counsel most strongly rely. In that case, the court held that the defense of the surety in an action brought upon the judgment was limited to a plea of *non est factum* to the bond, a release, the statute of limitations, or some defense of like kind, and that, unless such defense could be made and maintained, the judgment was conclusive. In the state of Pennsylvania, the common law rule and procedure prevail. Without following the reasoning of the court, we think it is sufficient to suggest that it is wholly met and overcome by the dissenting opinion of Chief Justice Gibson.

In *Bradley v. Chamberlin*, 35 Vt. 277, the sureties were held to be bound by the judgment rendered against the principal, but this case was made to rest upon a statute which provided that, where the judgment against a surety had been rendered by default, the surety might make any defense which the principal might have made in the original case, the court holding that the statute was an implied declaration of the legislative intent to bar the surety from a hearing on the merits if the original judgment had been rendered upon the merits.

We shall not cite or review the many authorities upon this vexed question. The subject is sufficiently discussed in 2 Brandt, Suretyship and Guaranty (3d ed.), § 808; 2 Black, Judgments (2d ed.), § 588; and Murfree, Official Bonds, §§ 598-601.

By the great weight of authority, as we find it to be and as we have really declared it to be in *Costello v. Bridges*, 81 Wash. 192, 142 Pac. 687, L. R. A. 1915A 853, a judgment rendered against the principal is binding upon the sureties when it is provided in the bond that the surety will answer any judgment or pay all damages that may be awarded in an action brought against the principal. In such case, the surety is bound, in the absence of a showing of fraud or collusion or other equitable defense, though he had no notice of the suit against his principal. But where the engagement is to answer in general terms for the faithful performance of a duty imposed by law or arising out of the relation or official character of the principal, a judgment against the principal is no more than *prima facie* evidence in a subsequent case against the sureties. In which event the burden of showing nonliability, either in fact or in law, is upon the surety. It is upon this principle that the case of *Ihrig v. Scott*, 13 Wash. 559, 43 Pac. 633, rests.

The most forceful expression of this rule to be found in the books is that of Chief Justice Shaw in *Lowell v. Parker*, 10 Metc. (Mass.) 309, 43 Am. Dec. 436. This is reflected

in all of the later cases holding to the rule of *prima facie* proof. Upon an objection that the judgment against the principal was *res inter alios* and therefore not admissible against the sureties, the learned justice said:

"We think this objection cannot be supported, under the circumstances of this case. When one is responsible, by force of law or by contract, for the faithful performance of the duty of another, a judgment against that other for a failure in the performance of such duty, if not collusive, is *prima facie* evidence, in a suit against the party so responsible for the other. If it can be made to appear that such judgment was obtained by fraud or collusion, it will be wholly set aside. But otherwise it is *prima facie* evidence to stand until impeached or controlled, in whole or in part, by countervailing proofs."

This language is quoted in *Stephens v. Shafer*, 48 Wis. 54, 3 N. W. 835, 33 Am. Rep. 793, where the court says, on page 62:

"Holding the judgment against the principal alone presumptive evidence, as against the sureties, of the facts established by such judgment, can work no hardship as long as the right is reserved to them of showing that the defense in such action was not made in good faith, was fraudulent, collusive, or suffered to be obtained through mistake as to the facts."

The rule with its only reasonable exception is stated by Mr. Pingrey in his work on Suretyship and Guaranty, § 65:

"It is said to be a general rule that a judgment against a principal is admissible as *prima facie* evidence in an action against the surety, and that sureties upon official bonds are not concluded by a decree or judgment against their principal unless they have had their day in court or an opportunity to be heard. There is, however, a large class of cases especially those of guardian and administrator which are sometimes spoken of as exceptions to the general rule, which sustain the doctrine that sureties are bound by the judgment against their principal to the same extent that their principal is, and such judgment is conclusive against the sureties in the absence of fraud or collusion. And if the

effect of the obligation is such that the surety is to be bound
by the results of the litigation between others he is, in the
absence of fraud or collusion, bound by such results. Where
the bond is not merely to pay damages, but is an indemnity
against liability by judgment, it is conclusive. If it under-
takes to pay such judgment as may be recovered, that judg-
ment is conclusive, because that judgment is the event on
the happening of which the surety agrees to pay."

One who is charged to meet a secondary liability, in the
absence of a contract waiving the right, should be entitled
to his day in court. In the case at bar, the engagement is to
answer for the faithful discharge of an official duty of an
officer. The law will not deny to one who is called upon to
answer for the misconduct of another an opportunity to be
heard in his own behalf on the primary fact of liability.
Such a rule is consistent with common sense and right, and
it works no hardship upon one who is seeking, presently or
in the future, to recover upon an official bond. He may, and
of right ought to, make the surety a party to the action. If
he does so, the surety, being a party, may urge *any* defense
to the merits. Can it be said that, by wilful design, the
surety may be exempted as a party to a suit against the
principal, and afterwards, upon direct action against it, be
denied any defense which it could have urged if it had been
a party to the first action? The law would be a sorry thing
indeed if justice depended upon such practices. Moreover,
it is provided by statute (Rem. Code, § 959), and being so
provided, the suggestion that it ought to be done follows,
that an action may be maintained against an officer and his
sureties, thus modifying the rule as we understand it to have .
been at common law that a suit was to be maintained against
the principal in the first instance and, after judgment and
return *nulla bona*, the surety was to be called to answer a
*scire facias*.

Without holding that a party must join the principal
and surety, we do hold that, having failed to do so, he must,
in a subsequent suit upon a bond other than one binding the

surety to pay any judgment that may be rendered against the principal, admit the right of the surety to be heard upon the merits, the same as it might have been heard if made a party in the first place.

The plea of nonliability on the part of appellant surety company, in so far as it pleads the lawfulness of the act of the sheriff, is sufficient in law and, if sustained in fact, will exempt appellant of liability on the bond. The demurrer to the affirmative answer should have been overruled.

We have said enough to indicate our holding that the contention of the appellant surety company that it cannot be bound in any event by a former judgment unless it is so provided in terms in the contract, is not well taken. We would, however, state our holding in another way. In the absence of an express agreement, the surety is not bound by a judgment entered against its principal in a suit to which it was not a party, but may be bound by a judgment entered against it in a subsequent action. And of the merits, the judgment is *prima facie* evidence.

Reversed, and remanded with directions to overrule the demurrer to the answer, and for trial upon the merits.

ELLIS, C. J., MAIN, MORRIS, and WEBSTER, JJ., concur.