DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 14705. Department One. October 14, 1918.]

WALTER H. WHEELER, *Respondent*, v. EDWARD PITWOOD
et al., *Appellants*.[1]

CONTRACTS (36, 38)—REQUISITES—VALIDITY OF ASSENT—FRAUD—
EVIDENCE—SUFFICIENCY. An engineer and contractor is not shown
to have been guilty of fraud in securing a contract to furnish dia-
grams and steel for a building, by false representations as to the
amount of steel required, where, upon invitation, he merely made
a lump sum bid on the job, agreeing to furnish all the steel re-
quired, as shown by blue prints and drawings furnished to him,
from which he estimated about 45 tons of steel would be needed,
and from which any competent person could figure the amount
required, subject to a variation of 10 per cent; although the. job
actually required but 39 or 40 tons.

EVIDENCE (169)—PAROL EVIDENCE TO VARY WRITING—PRIOR ORAL
AGREEMENT—TIME FOR PERFORMANCE. Where a written contract to
furnish material for a building did not specify the time for delivery,
a reasonable time will be implied, and evidence of a prior oral
agreement is inadmissible to vary the construction legally implied
from the writing itself.

CONTRACTS (134)—CONSTRUCTION — BUILDING CONTRACT — "STOCK
SHIPMENTS"—REASONABLE TIME. A contract by an engineer to fur-
nish diagrams and structural steel for a building, which provided
that he was to proceed at once to order the steel from a certain
jobber, all steel to be "stock shipments," is complied with by order-
ing from the jobber, although a small portion had to be ordered
by the jobber from the mill because not in stock, where it was all
furnished within the reasonable time called for by the contract.

[1]Reported in 175 Pac. 289.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered November 3, 1917, upon findings in favor of the plaintiff, in an action to foreclose a mechanics' lien, tried to the court. Affirmed.

*Cannon & Ferris,* for appellants, contended, *inter alia,* that if a person knowingly makes a false statement, even as to matters of opinion, for the fraudulent purpose of deceiving another, and thereby inducing him to enter into a contract or assume an obligation which he would not otherwise have entered into or assumed, it is a fraudulent misrepresentation, calling for relief or damages. Black, Rescission and Cancellation, pp. 194, 531; *Sowles v. Fleetwood,* 97 Wash. 166, 165 Pac. 1056; *Duffy v. Blake,* 80 Wash. 643, 141 Pac. 1149; *Becker v. Clark,* 83 Wash. 37, 145 Pac. 65; *Edward Barron Estate Co. v. Woodruff Co.,* 163 Cal. 561, 126 Pac. 351, 42 L. R. A. (N. S.) 125, 132; *Hingston v. L. P. & J. A. Smith Co.,* 114 Fed. 294; *Macdonald v. De Fremery,* 168 Cal. 189, 142 Pac. 73; *Brandt v. Krogh,* 14 Cal. App. 39, 111 Pac. 275; *Scott v. Burnight,* 131 Iowa 507, 107 N. W. 422; *Gordon v. Hillman,* 91 Wash. 490, 158 Pac. 96; *Crawford v. Armacost,* 85 Wash. 622, 149 Pac. 31.

Respondent is liable for failure to deliver from stock instead of from the mills, and the consequent delay and damage. *Bavaria Inv. Co. v. Washington Brick, Lime & Sewer Pipe Co.,* 82 Wash. 187, 144 Pac. 68; *United States v. Gleason,* 175 U. S. 588; *Kelley, Maus & Co. v. La Crosse Carriage Co.,* 120 Wis. 84, 97 N. W. 674, 102 Am. St. 971; *Brownell v. Chapman,* 84 Iowa 504, 51 N. W. 249, 35 Am. St. 326; *Danenhower v. Hayes,* 35 App. D. C. 65, 33 L. R. A. (N. S.) 698, and note.

*Hamblen & Gilbert,* for respondent.

MITCHELL, J.—This action was brought by respondent to foreclose a lien upon the property of appellants Edward Pitwood and wife, on account of reinforcing diagrams and steel furnished in changing a building of appellants in Spokane from mill construction to a fireproof building with reinforced concrete floors. The defense was false representation as to the amount of steel to be furnished for the contract price, false representation as to the time of delivery of the steel, and failure to deliver as agreed; all knowingly done to induce appellants to enter into the contract; and because of the failure of respondent to furnish steel in the amount and within the time agreed, appellants demanded damages. Defendant Welsh Investment Company is not interested in this appeal. There was judgment foreclosing the lien as demanded in the complaint.

Respondent, who resided in Minneapolis, was an engineer and contractor of structural iron work, and sold reinforcing steel used in such work, having had assigned to him certain territory (which included Spokane) by the C. A. P. Turner Company of Minneapolis, which company was a heavy jobber in steel of that character carried by it to supply its customers, including respondent, who represented the Turner Company in placing what is called the "Turner Spiral Mushroom System," the kind that was used in the Pitwood building. The system included necessary working reinforcing diagrams and plans, including those for the laying of the steel. One P. F. Kennedy was in the employ of respondent as a solicitor of business in Spokane and became active to get the Pitwood job. Several other persons made bids on a per-ton basis for whatever steel was used, agreeing also to furnish working diagrams. Mr. Kennedy had several talks with appellant and was advised of prospective storage patrons of the building for the following winter. Mr. Kennedy spoke of the

advantage of prompt delivery, or "stock" shipment, his principal could give, and it appears that respondent was advised thereof by Mr. Kennedy. On July 28, 1916, Mr. Kennedy wrote respondent at Minneapolis asking that he make a bid on the job, inclosing in his letter preliminary sketches, not working drawings, consisting of blue-prints of floor plans furnished by appellants' architect. Using the preliminary sketches, which generally varied, it seems, from working drawings as much as ten per cent, for the purpose of determining the amount of material required, respondent figured that about forty-five tons of reinforcing steel would be required, and promptly submitted a written contract, which, with one slight change, to be noticed hereafter, was signed by the parties on the dates and at the cities shown by the contract. The contract, consisting of an offer and acceptance, is as follows:

"Seller's Original Copy.
"Minneapolis, Minn., July 31, 1916.
"Dr. E. Pitwood,
      "503 Hyde Bldg., Spokane, Wash.

"Dear Sir: Referring to blue-prints of sketches of your architects, Hyslop and Westcott, showing plans of first, second, third and fourth floors of your warehouse building sent me by Mr. P. F. Kennedy of your city, also to the blue-print of my drawing No. 1, revised showing framing plans for your said building, which I understand you propose to convert from mill construction building to a fireproof building with reinforced concrete floors;

"My price for the necessary reinforcing diagrams and reinforcing steel for said building is Four Thousand Nine Hundred Sixty Dollars ($4,960) steel delivered f. o. b. shipping point and allow freight to Spokane, Washington. Steel all stock shipment. Steel all straight, cut to length, except spirals for column tops which will be furnished coiled with spacing bars, column spirals which will be furnished coiled to the

proper diameter and column and beam bars which will be furnished bent to detail. The above price is based on using the 'Turner Spiral Mushroom System' of reinforced concrete construction, designed in accordance with our standard practice as approved by C. A. P. Turner of Minneapolis, Minn.

"I include in the above proposition the necessary reinforcing diagrams and reinforcing steel for only the following items: column footings, columns, 2d, 3d, 4th floor slabs and roof slab, necessary interior and spandrel beams supporting same, reinforced concrete stairs.

"Terms: Terms shall be cash thirty days from steel delivery days, payments to be made from time to time as steel is delivered in funds current in New York, N. Y., at the office of Walter H. Wheeler, 1112 Met. Life Bldg., Minneapolis, Minn. I to proceed at once to order the necessary reinforcing steel required by my said diagrams soon as said diagrams are complete and steel lists made. I make the foregoing proposition for acceptance in writing at my said office on or before August 7, 1916, as per form of acceptance as hereon below written. After said date same will be subject to change without notice.

"The above is all contingent upon strikes, accidents, delays of carriers and other delays unavoidable and beyond my control. I estimate said work will require about 755 cu. yards of concrete and 50 tons of reinforcing steel. Yours truly, (Signed)

"Walter H. Wheeler.

"Signed August 10, 1916, at Minneapolis, Minn."

"Spokane, Washington, August 5, 1916.

"Mr. Walter H. Wheeler,

"1112 Metropolitan Life Bldg.,

"Minneapolis, Minn.

"Dear Sir: Referring to your foregoing proposition offering to furnish me the necessary reinforcing diagrams and reinforcing steel for remodeling my warehouse, for which Hyslop & Westcott are architects, I hereby accept your said offer as above and agree to pay you for the use of said reinforcing diagrams and

for the necessary reinforcing steel as above the sum of $4,960. I to pay the freight on all steel shipped in by you. You to credit me with the amount of said freight when paid, provided I furnish you the original freight bills for same receipted by the transporting railway companies. Terms to be cash 30 days from the steel delivery days, payments to be made you from time to time as steel is delivered, in funds current in New York, N. Y., payable to the order of Walter H. Wheeler, at his office 1112 Met. Life Bldg., Minneapolis, Minn. You to proceed at once to order said steel as soon as your reinforcing diagrams and steel lists are complete. It is understood steel delivery is f. o. b. point of shipment. Yours truly,

"(Signed) Edward Pitwood.

"Signed at Spokane, Washington, August 5, 1916."

In the contract as forwarded by respondent, the last sentence above the place for the signature of respondent was:

"I estimate said work will require 755 cu. yds. of concrete and not more than 50 tons of reinforcing steel."

Appellants' architects objected to the words *"not more than,"* insisting that respondent was to furnish all the steel required by the items in the contract, whereupon the last sentence in that portion of the contract was rewritten to read as shown in the contract, and then signed by the appellant. It was then forwarded to the respondent, who signed it on August 10, 1916.

As soon as appellant signed the contract in Spokane, Mr. Kennedy advised respondent by wire, whereupon respondent, after a week's work, prepared complete working plans and diagrams from which he figured accurately the amount of steel needed, and promptly ordered all the steel from the Turner Company of Minneapolis. The Turner Company's stock of steel varied, of course, according to its sales and purchases, the lat-

ter of which were occasionally affected by some delay
of supply from the mills, and a small part needed in
this order had to be gotten from the mill by the Turner
Company after receiving the order. The steel was
forwarded to Spokane in three shipments, as follows:
August 15th, September 5th, and October 7th. It ar-
rived at Spokane on August 25th, September 26th, and
October 13th. There is ample proof that the steel was
shipped and received within a reasonable time, consid-
ering both the general transportation conditions and
steel market at that time. All steel needed was fur-
nished, and it amounted to between thirty-nine and
forty tons. Severe and continuous winter weather
came on about November 1, somewhat earlier than
usual, preventing the completion of the building until
late in the winter. Appellants refused to pay the con-
tract price.

Appellants, in presenting the cause, reduce their con-
tentions to two points: First, shall the respondent re-
cover the amount of his contract where he intentionally,
or by design, misrepresents a material fact or produces
a false impression in order to mislead the other, he
having accomplished his design to appellants' damage;
and second, where an agreement is entered into to fur-
nish material from "stock" in less than two weeks and
an excess price is paid for stock shipment, has the
party complied with his agreement when he furnishes
"mill shipment," which takes a much longer time; and
may not the party injured recover damages resulting
thereby?

Appellants contend, in support of their first proposi-
tion, that, at the time the contract afterwards signed
was proposed by respondent, he was advised by the
blue-print sketches that had been furnished him how
to accurately determine the amount of steel required;
that he did so determine, and that, by the terms of the

proposed writing, he purposely misrepresented that fifty tons would be needed instead of between thirty-nine and forty tons; that he knew appellants relied on it, and that the statement was made to deceive, and did deceive, appellants to their damage. With such idea of the facts, our attention is called by appellants to a splendid line of cases from this and other courts, the doctrine or rule of which may be clearly exemplified by reference to two of the cases in this court, as follows: *Wooddy v. Benton Water Co.,* 54 Wash. 124, 102 Pac. 1054, 132 Am. St. 1102, wherein the court say:

"All the cases agree that the purchaser may rely upon representations of the vendor where the property is at a distance, or where for any other reason the falsity of the representations are not readily ascertainable; . . ."

and the case of *Sowles v. Fleetwood,* 97 Wash. 166, 165 Pac. 1056, to the effect that, upon the sale of the furniture and good will of a hotel business, false representations as to the value of the business and amount of monthly profits, peculiarly within the knowledge of the seller and inducing the sale, may be relied upon by the purchaser.

In this matter, appellants argue that, in alleging respondent intended to deceive, they are strongly fortified by a letter written on September 13, 1916, by respondent in answering a letter of Mr. Kennedy stating that, on checking over the steel furnished, appellants' architects expressed dissatisfaction that there was considerably less than fifty tons. In his letter respondent wrote:

"Regarding the quantity of steel, I have to furnish under my contract the steel called for by my reinforcing diagrams and that is all. My estimates of quantities I always try to make liberal. Our competitors make it a practice to estimate the tonnage of steel ex-

cessively large so as to make their price per ton appear lower, and we have to follow their example to some extent, or be at a disadvantage. I have already gone into my own pocket to quite an extent more on this job than I had to under my contract, in order to give service and satisfaction, and I shall expect prompt payments in full as per invoice and contract.''

We do not agree with appellants' understanding of the facts, and hence consider the authorities cited as inapplicable. Respondent was never requested nor employed to say how much steel would be needed. He was asked to bid on the job and, if successful, was to furnish accurate working plans and diagrams for a special patented system and all the reinforcing steel required. For making a bid he was furnished an architect's preliminary sketches, which for the purpose of advice (and considering the variations in weight of steel bars) are, without dispute, flexible to the extent of ten per cent. Surely, in such circumstances, a bidder is not called upon to prepare, at the expense of much time and labor, valuable working drawings essential to accuracy for ascertaining the amount of steel required in order to escape the imputation of fraud and intentional deceit. He was to bid on the job and, with the sketches furnished, calculated as best he could, the amount of steel required at forty-five tons. Thereupon, and bearing in mind the uncertainty of figures based on preliminary sketches, respondent proposed a contract providing as an estimate *not more than* fifty tons of reinforcing steel. But appellants' architect objected to the words *"not more than,"* insisting that respondent was to furnish all the steel *required* by the items stipulated, etc. The architect was right, for respondent was bidding on the job and he should furnish all the steel needed; so that the three words were stricken and the contract signed. For the purpose of determining the

amount of steel finally needed, these persons were dealing at arm's length. In our opinion, respondent's letter of September 13, 1916, has no harmful bearing on his case. The contract had already been signed and nearly all the steel delivered. In what manner, within the rule of liability, does it show an overreaching mind at the time the contract was proposed by the respondent? What means of knowledge had respondent for making the estimate that was not just as accessible to appellants? He had none whatever except appellants' own sketches, from which any qualified person other than respondent could have readily ascertained for appellants the amount of steel required.

As to appellants' second proposition, they proceed upon the erroneous assumption that the material was to be furnished in less than two weeks. Over objections of respondent, there is testimony to show there were conversations and representations as to time for making delivery of the material, made by Mr. Kennedy prior and looking to the making of a contract. All such representations, however, were ignored and waived by appellants in the written contract subsequently entered into, which is silent as to time for performance.

"Where the contract fails to specify a time for completion, the builder is entitled to a reasonable time within which to perform, and it will be implied that a reasonable time for performance was intended; *and if the contract is in writing evidence of a contemporaneous oral agreement is inadmissible to vary the construction thus legally implied from the writing itself.*" 9 C. J. 780.

The same rule applies in the case of a contract to furnish *material* and *prior* representations or agreements as to time. As already mentioned, the proof shows the material was shipped and received within a reasonable time; and it is significant that, on October

18, 1916, five days after all the steel had been received, appellant wrote respondent as follows:

"I am willing to pay you upon the representations of your agent here at the rate of $100 per ton for the tonnage used as was understood by myself and witnesses all through the transaction. *The money is ready and after deducting the prepaid charges from this $100 per ton, the balance as full payment will be remitted upon notice from you.*"

Not a word written about time for performance or delay. Again, appellants claim that, because of a greater price paid, the material was to be stock rather than mill shipments, to save delay and damages to appellants, and that this plan was not followed. The contract provides:

"*I* (respondent) *to proceed at once to order* the necessary reinforcing steel required by my said diagrams soon as said diagrams are complete and steel lists made."

This same provision is repeated in appellants' written acceptance part of the contract. This provision of the contract was complied with; but, say appellants, such construction does violence to the words "steel all stock shipments" found earlier in the contract. Not so, however, for by construing them together, according to the rule, they harmonize with each other and with the facts, for the material was ordered from the Turner Company, who were large jobbers, not manufacturers, and whose system was being used, as appellants knew at the time of making the contract.

True, the jobber procured a small portion of the material from the mill to fill the order, but that is the source from which the jobber supplies all his stock. Manifestly, these provisions of the contract were for stock shipments, such as were made, rather than place the whole order with the manufacturer, who would be

slow to supply because of the magnitude of the order and prior orders and contracts. As stated above, the material was furnished within a reasonable time and appellants cannot complain.

The trial court was clearly right as to the weight of the evidence and the judgment given.

Affirmed.

MAIN, C. J., FULLERTON, TOLMAN, and PARKER, JJ., concur.