[No. 17148. Department Two.. October 31, 1922.]

## MERCHANTS BANK OF CANADA, *Appellant*, v. E. A. SIMS et al., *Respondents.*[1]

CONTRACTS (12)—EVIDENCE OF AGREEMENT—CONTRACT TO EXTEND CREDIT. Findings that a bank agreed to extend a credit of $25,000 to a corporation to conduct a fish cannery, without an individual guarantee from the promoters and stockholders, is sustained where three witnesses testified positively to the agreement, although contradicted by two officers of the bank; it appearing that the conduct of each side was consistent with the claims each made, although the bank later repudiated the agreement and refused to advance further credit until the stockholders signed the guarantee in suit; the minds of the parties not having met in the first instance.

SAME (3)—CERTAINTY AS TO TIME. Such an agreement is not void for uncertainty or indefiniteness, from the fact that it fails to fix a definite time when money should be advanced or repaid; especially where the method or custom of banks in extending such credit in the fishing business was explained.

SAME (4)—MUTUALITY OF OBLIGATION. Such an agreement was not void for lack of mutuality by reason of want of consideration for the oral promise of the officers of the bank, where it was agreed that the banking business of the company was to be transacted exclusively with that bank, and in reliance thereon the promoters subscribed for their stock in the company and advanced money to the corporation.

DAMAGES (12, 13)—NATURAL AND PROBABLE CONSEQUENCES OF BREACHES OF CONTRACT. The damages from a bank's breach of its contract to extend credit in a certain sum to a concern engaged in the fishing business includes, as special damages reasonably within the contemplation of the parties and the natural and proximate results of the breach, losses on twine and in the commissary department, and for the decreased catch of fish, and loss of the plants

[1]Reported in 209 Pac. 1113.

and cannery, when the company was forced into liquidation by reason of the want of credit, where the canning business, its prospects and financing of the company were fully discussed.

DAMAGES (113)—EVIDENCE (170)—RELATION OF ORAL AGREEMENT TO WRITING. In an action by a bank against stockholders upon a written guarantee of the debts of the company reciting that it is "in consideration of the bank dealing" with the company, the defendants may show special damages by reason of the breach by the bank of a prior oral agreement to extend the company credit, which was not inconsistent with the written guarantee; since the written guarantee was only collateral to the agreement previously made.

INDEMNITY (9)—JUDGMENT (258)—FOREIGN JUDGMENT—CONCLUSIVENESS AGAINST INDEMNITOR OF FORMER ADJUDICATION. A default foreign judgment against a corporation, to which the guarantors of the company were not parties, would not prevent them from showing nonliability of the company, in a subsequent suit against them on their guaranty, where the guaranty was a general one to answer any default, and not one to answer for any judgment or pay all damages awarded in an action against the principal.

Appeal from a judgment of the superior court for King county, French, J., entered October 18, 1921, upon findings in favor of certain defendants, in an action on promissory notes and to enforce a guarantee bond, tried to the court. Affirmed.

*Bronson, Robinson & Jones,* and *Tucker & Hyland,* for appellant.

*Kerr, McCord & Ivey,* for respondents.

MAIN, J.—This action was brought by the Merchants Bank of Canada, doing business at Edmonton, Alberta, against the defendant Athabasca Fish Company, Limited, a corporation, for the purpose of recovering the balance due upon four promissory notes, and against the defendants E. A. Sims and John W. Pace on a guarantee bond by which they had guaranteed the payment of all moneys loaned or advanced to the fish company. The defendants Sims and Pace answered separately and each admitted the guarantee,

and pleaded an affirmative defense to the effect that the plaintiff had breached its agreement to extend a credit to the fish company in the sum of $25,000, and as a result thereof damages resulted in excess of the sum of $10,000, which was the balance due upon the notes. The principal issue upon the trial arose upon this affirmative defense and the plaintiff's denial thereof. The cause was tried to the court without a jury, and resulted in findings of fact, conclusions of law supporting the affirmative defense, and a judgment dismissing the action as to Sims and Pace. From this judgment, the plaintiff appeals.

The findings of fact, as made by the trial court, may be summarized as follows: The Merchants Bank of Canada is a banking corporation, having a branch at the city of Edmonton, in Alberta. For some time prior to the 25th day of May, 1918, John W. Pace had been investigating the fishing business in the vicinity of Edmonton and had commenced the organization of the Athabasca Fish Company, with a capital stock of $25,000. In carrying on this investigation, Pace, in his individual capacity, had borrowed money from E. A. Sims and W. E. Persell, and had arranged to have a cannery outfit shipped to Edmonton. On the date mentioned, Pace was personally obligated for all advances made by Sims and Persell. Both Sims and Persell were experienced in the fishing and canning business in Washington and, to some extent, in Canada. During the latter part of May, 1918, they went to Edmonton to investigate the business there and determine whether they desired to become interested with Pace. On the morning of the 25th of that month, Pace, Sims and Persell went to the Merchants Bank of Canada, at Edmonton, and there met the manager of the bank, Frank Pike, and the assistant manager,

Stanley E. James. The fish business and the plans for operating the Athabasca Fish Company in particular were discussed in detail at the meeting. The officers of the bank were advised that it would be necessary for the company to obtain a credit of $25,000 in order to carry on the business. The method of financing fishing operations in the state of Washington was explained to the officers of the bank. They were advised that, as fish were canned and sold, the proceeds were paid over to the bank extending the credit to apply on advances. The officers of the bank, at the time, asked Sims, Persell and Pace to execute a guarantee covering any advances which might be made to the company. This, Sims and Persell refused to do. The officers of the bank nevertheless agreed to extend a credit to the fish company, without the guarantee, in the sum of $25,000, to be advanced as the needs of the company might require. Sims, Pace and Persell, on the other hand, agreed that the account of the company should be carried with the bank and that its business would be there conducted.

Immediately after this conference, the organization of the fish company was completed. Sims and Persell each subscribed for $9,000 worth of stock in the company and advanced in cash to it the sum of $5,000, which, on the following day, was deposited in the bank. The organization of the company having been completed, Sims and Persell returned to Seattle without attempting to make banking arrangements with any other bank, relying on the agreement which they claim the Merchants Bank of Canada had made to extend the credit of $25,000. Subsequently, the officers of the bank refused to make any advances without a guarantee signed by Sims and Pace, and as a result, on the 6th day of July, 1918, the guarantee was signed upon

which this action is predicated. After the guarantee was signed, the bank advanced to the company various sums, totaling approximately $14,600, and the company on its part turned over the proceeds of canned fish to apply on the indebtedness so created. This continued throughout the summer season of 1918.

In November of that year the company sought a further advance of $6,000 to cover its approaching winter operations. This advancement was refused; the company was unable to obtain money elsewhere and it was compelled to cease operations and was forced into liquidation. Thereafter an action was brought in Canada against the corporation, and judgment was obtained. After the company's property had been sold and the portion of the proceeds which went to the bank was applied upon the indebtedness, there still remained due, as above stated, approximately the sum of $10,000. This is briefly the story of the case as it is told in the findings of the trial court. A more detailed reference to the facts as they pertain to particular questions will be made in connection with the consideration of the question to which they may be germane.

The first question to be determined is one of fact, and that is, whether the officers of the bank, at the conference on May 25th, agreed to extend a credit to the fish company to the extent of $25,000, if such sum be needed by that company, without the written guarantee. Upon this question the evidence is diametrically and unequivocally contradictory. The two officers of the bank who were present testified positively that there was no agreement to extend a credit without the guarantee. On the other hand, Pace, Sims and Persell testify that there was such an agreement. The trial court, upon this conflicting testimony, found the fact

to be that there had been an agreement to extend the credit without the signed guarantee, and that the agreement was breached by the bank when it subsequently required such a guarantee before it would extend a credit.

The appellant argues that the finding of the trial court is not sustained by the weight of the evidence. It is contended that the circumstances surrounding the dealings of the parties and their subsequent actions lead to the conclusion that the finding of the trial court cannot be sustained. The conduct of the officers of the bank subsequent to the 25th, when it is claimed that the agreement to extend a credit without the guarantee was made, was consistent at all times with their present position that no such an agreement was made. They declined, when application was made, to make advances, and when the money was advanced to the company, it was done on terms which were consistent with the position taken by the manager of the bank at the meeting. On the other hand, the conduct, especially of Sims and Persell, was consistent with the contention that the agreement was, in fact, made to extend credit without the guarantee being executed. Immediately after the conference, they subscribed for stock, advanced money, and returned to the state of Washington. They were experienced in the fishing business and it was apparent that, if the company did not have credit, it could not proceed far with the undertaking. They hardly, under the circumstances, would have become interested in the company and returned to the state of Washington without believing that they had arranged for a credit, knowing, as they must have known, that, without such credit, failure of the business was inevitable. Without reviewing the evidence upon this question more in detail, it may be

said that, after giving it careful consideration, we are convinced that the finding of the trial court should be sustained.

It is next contended that, even if such an agreement was made as the respondents claim, then it is void, because (a) the minds of the parties never met; (b) it was too indefinite and uncertain to be enforcible; and (c) it lacked mutuality. Whether the minds of the contracting parties met is a question of fact. If the agreement was as contended for by the respondents, then the minds of the parties did meet upon the essential terms of the contract. The trial court found, as above stated, in accordance with this position, and we have reached the same conclusion.

Upon the question of uncertainty or indefiniteness, it will be admitted, as contended by the appellant, that a contract to be enforcible must be reasonably certain as to its terms and duration. The fact that an agreement does not fix a definite time when money should be returned, advanced or repaid would not make the contract fatally defective for uncertainty or indefiniteness. The general rule is that, where a thing is to be done and no time is fixed, it will be presumed that a reasonable time was intended. *Wheeler v. Pitwood,* 104 Wash. 1, 175 Pac. 289; *Smith Sand & Gravel Co. v. Corbin,* 81 Wash. 494, 142 Pac. 1163. Whether this rule applies to the payment or advancement of money, it is not necessary here to determine. In such a case, some authorities hold that the money is to be repaid upon demand, while others hold that it is to be repaid within a reasonable time. The result would be the same in this case whichever rule be applied. The fact that the contract did not fix the time nor the amount which should be advanced from time to time, but only fixed the total beyond which the

credit should not extend, does not render the contract void for uncertainty. In *Sanders v. Barnaby*, 166 App. Div. 274, 151 N. Y. Supp. 580, the defendant had agreed to furnish money by subscribing and paying for $19,000 worth of stock of a corporation, "or such portion thereof as may be necessary to provide the said corporation with working funds and capital as a going concern," and it was there held that the contract was not void for indefiniteness. In *Pugh v. Jackson*, 154 Ky. 649, 157 S. W. 1082, it was held that a contract between a lessee of a coal mine and an officer of the lessor which binds the officer "to make the weekly payrolls" for the lessee was not void for indefiniteness. In addition to this, at the time the contract was made, the method or custom of banks in Washington extending credit to parties engaged in the fishing business was explained to the officers of the appellant bank. Parties are at liberty to refer to and adopt as a part of their contract any lawful usage or custom. In 17 C. J. 496, it is said:

"Parties are at liberty to refer to and adopt any lawful usage as a part of their contract; and where the language of a contract stipulates for performance according to a specified usage, the courts will enforce the contract in accordance with the usage so incorporated."

Whether the contract was void for lack of mutuality depends upon whether there was any consideration for the oral promise of the officers of the bank to make the advancement. There was such consideration. The business of the company was to be transacted with the appellant bank, and not with any other bank, and in addition to this, in reliance upon the agreement, the respondents Sims and Persell subscribed for stock

and advanced money to the corporation. In *Farabee-Treadwell Co. v. Union & Planters' Bank & Trust Co.,* 135 Tenn. 208, 186 S. W. 92, L. R. A. 1916F 501, it was held that the defendant bank was liable for breach of a contract to loan money in consideration of the transfer by the plaintiff of a deposit to that bank, as such contract was not unilateral but was supported by a consideration which was a substantial deposit. The case of *Swindell & Co. v. First National Bank,* 121 Ga. 714, 49 S. E. 673, is distinguished by the fact that there was no consideration for the agreement to make the advancement. Subscribing for the stock and the advancement of money to the corporation after the agreement was made would operate as a consideration in support of such agreement, even though such consideration did not move to the appellant bank. In reliance upon the agreement, the respondents had put themselves in a worse position than they would have been had the agreement not been made. In *Harlan v. Harlan,* 102 Iowa 701, 72 N. W. 286, it was said:

"It is said by Parsons the rule is perfectly well settled 'that, if a benefit accrues to him who makes the promise, or if any loss or disadvantage accrues to him to whom it is made, and accrues at the request or on the motion of the promisor, although without benefit to the promisor, in either case the consideration is sufficient to sustain assumpsit.' 1 Pars. Cont. 451. See *Blake v. Blake,* 7 Iowa 46; *Handrahan v. O'Regan,* 45 Iowa 298. Courts 'will not ask whether the thing that forms the consideration does, in fact, benefit the promisee or a third party, or is of any substantial value to any one. It is enough that something is promised, done, foreborne, or suffered by the party to whom the promise is made, as consideration for the promise made to him.' "

The contract was not void for any of the reasons alleged.

It is next contended that, even if the agreement was established by the evidence, no damages were proved which would operate as a defense to an action on the guarantee. Conceding that the general rule is, as contended for by the appellant, that the measure of damages for the breach of a contract to loan money, in the absence of any showing of special damages, is legal interest, the question arises whether special damages have been established in this case which would offset a recovery on the guarantee. Special damages, for which recovery may be had, are such as can be said to be reasonably in the contemplation of the parties at the time of the making of the contract and such as are the natural and proximate results flowing from its breach, and must be proved with reasonable certainty. In this case the evidence brings within the rule the loss occasioned upon twine which was used by the fishermen, loss on the commissary department, loss for the decreased catch of fish, and loss of the plants and cannery. These items aggregate a sum in excess of the amount still due from the fish company to the appellant. They were such as were reasonably in the contemplation of the parties at the time of the making of the agreement, and were the natural and proximate results flowing from its breach. At the time the agreement was made, the fish canning business and its prospects were fully discussed between the parties, and the organization, prospects and financing of the fish company were discussed in particular.

Lastly, it is contended that the agreement to advance money, which the respondents contend was made when the parties met and discussed the matter, is no defense to the action upon the written guarantee which was subsequently signed. The guarantee recites that "the undersigned (Sims, Pace and Watson) in considera-

.tion of the Bank dealing with the Athabasca Fish Company (Limited), guarantees to and agrees with the Bank as follows: . . .'' The rule, as stated in *Van Lehn v. Morse,* 16 Wash. 219, 47 Pac. 435, is that when ''one consideration is expressed in a deed, any other consideration consistent with it may be averred and proved.'' The recital in the written instrument that it was in consideration of the bank dealing with the fish company is not inconsistent with the previous agreement that the bank had made to extend credit. In addition to this, the guarantee was only collateral to the agreement which had previously been made. The oral agreement being the principal contract between the parties and the guarantee being collateral, it was competent to prove such prior principal agreement by oral testimony. *Knowles v. Rogers,* 27 Wash. 211, 67 Pac. 572. The default judgment in Canada against the fish company, to which Sims and Pace were not parties, would not prevent them from alleging and proving that special damages had accrued by reason of the breach of the contract, and thus defeat the action against them. Whether the fish company, the one primarily liable, could allege such a defense in this action is not here material and no opinion is expressed with reference to it. Where the guarantee upon which the action is based is one to answer in general terms for any default of the principal, and is not one which provides that the surety will answer for any judgment or pay all damages that may be awarded in an action brought against the principal, a judgment against the principal does not prevent the guarantors, in a subsequent action against them, from showing non-liability. Under the rule stated in *Larson v. Deering,* 97 Wash. 616, 166 Pac. 1119, Sims and Pace had a right to allege and prove special damages

by reason of the breach of the agreement to extend credit and offset these against the balance due from the fish company to the appellant. It seems to us that the real and substantial question in this case is one of fact, and when this question is once determined, the law questions which have been presented and which we have attempted to cover are not very difficult.

The judgment will be affirmed.

.PARKER, C. J., HOLCOMB, MACKINTOSH, and HOVEY, JJ., concur.