DODDRIDGE *v.* AMERICAN TRUST AND SAVINGS BANK.

[No. 14,714.   Filed March 9, 1934.]

*Everett W. Trook* and *Milton T. Cawson,* for appellant.

*Will W. Reller,* for appellee.

SMITH, J.—Appellee sued appellant upon a promissory note by a complaint in one paragraph. Appellant filed four paragraphs of answer, which under the questions raised herein are not necessary either to set out or consider; he also filed a seventh paragraph of answer to which a demurrer was sustained, but no question is presented upon this ruling. Appellant filed three paragraphs of counterclaim numbered five, six, and eight. Appellee filed a motion to strike out parts of the sixth paragraph of counterclaim which was sustained, and also filed demurrers to the fifth, sixth, and eighth paragraphs of counterclaim, each of which was sustained.

The only errors presented and relied upon for reversal are sustaining the motion to strike out parts of the sixth paragraph of appellant's counterclaim; and sustaining the appellee's demurrers to the fifth, sixth, and eighth paragraphs of counterclaim.

This cause was submitted to the court for trial, and a general finding was made for the appellee, and judgment rendered against appellant upon appellee's complaint in the sum of $2060.98.

Appellant filed a motion for a new trial, but no question is presented thereon, nor is the evidence in the record.

The questions presented by appellant upon the demurrers to the counterclaims can be determined by considering the demurrer to the eighth paragraph of counterclaim. This paragraph is substantially like the fifth and sixth paragraphs of counterclaim, except that the sixth paragraph, in addition to the elements of damage as herein set out, claims damage for the failure of appellee to sell the corporation stock, which appellant put up as collateral, by reason of the failure to sell it and apply the proceeds on his debt, whereupon the stock depreciated in value. The material allegations contained in this eighth paragraph, in substance, are: That appellant was engaged in the manufacturing of caskets and funeral supplies near the town of Milton, Wayne county, Indiana; that he sold his product throughout the United States and Canada, and had an acquaintance with many persons extending over a number of years; that, prior to the execution of the note sued upon and entering into the agreement hereafter mentioned, there was a bank at Milton, Indiana, known as the Washington Bank, which was owned and controlled by appellee; that, during the times mentioned, the appellant did his banking business at Cambridge City, Indiana; that appellant had patented a practical device

for covering graves, and had applied for a patent on an appliance for raising and lowering coffins; and also was the owner of a device known as a steel guard for roadway protection, to prevent automobiles from leaving the highways; that these articles were practical and useful, and there was a large market therefor; that appellant operated his business under the name of J. M. Doddridge and Sons, a corporation, and was the president of, and managed, owned, and controlled the same; that the transactions had with the appellee were all had and the arrangements therefor made by the appellant for and on behalf of said corporation; that, prior to the making of the note in suit, appellant went to the appellee's agents for the purpose of borrowing money, and informed appellee through its agents of the devices he controlled and owned, of his purpose to manufacture them, and of the large market therefor, but that he did not have the money necessary to finance the making and marketing of these devices; that he then requested appellee to lend to him a sum of money not to exceed $10,000 so that he, through his corporation, could undertake the manufacture of these devices and put them on the market; that appellant told appellee's agents that, if they did not lend him the money, he would not undertake the manufacture of these devices; and that he did not have sufficient money therefor; that appellee then agreed to lend appellant money as he needed it up to $10,000; that it was upon this agreement and not otherwise that appellant undertook the manufacture and marketing of these devices; that pursuant to said agreement appellee lent to appellant the sum of $2,500 (the fifth paragraph of counterclaim alleged that appellant obtained an additional loan of $2,000 more, making $4,500 in all) ; that, when the note for $2,500 became due, the appellant needed more money and made a request therefor, but appellee

refused to lend him any more money, and then demanded that he put up as collateral for the loan already obtained two dollars of stock in his corporation for each dollar borrowed by him from appellee, and that, in addition, appellant should transfer one half of the deposits of the corporation account at Milton, Indiana, to the bank owned and controlled by appellee; that, in compliance with such demand, appellant deposited with appellee the stock of his corporation and made the deposit of money of his corporation account as demanded; that at the time of the bringing of the suit the $2,500 note had been reduced to $1,600; that every time payment was made on the original note or the renewals, the appellant protested to appellee that it had breached the contract, and told appellee that he had been damaged by the appellee's refusal to lend him any more money; that, upon the refusal to lend appellant any more money, he made various attempts to borrow elsewhere and could not; that banks refused him further credit, and that he used due diligence to borrow elsewhere and found it impossible, all of which was known to appellee prior to the filing of the suit herein; that he sought to secure loans from different banks, and attempted to sell stock in his corporation to raise funds, but was unsuccessful therein, and could not secure the money to replace the amount appellee had agreed to lend him.

By reason of the refusal of appellee to lend him further sums of money, appellant charged he was crippled financially and commercially injured in his business standing; that he could not continue to manufacture these devices or place them on the market, all of which was well-known to the appellee and told to him by appellant; that appellant fully explained his proposition and the circumstances herein to appellee prior to securing from appellee any money whatever, and that

appellee had full and complete knowledge of the doings and proposed doings of the appellant prior to the execution of the note in suit; that as a natural and proximate result of the refusal of the appellee to keep its contract and to lend appellant further money, his credit rating was injured and credit was refused; that drafts for the payment of bills were drawn upon him, but he was unable to meet the same; that all of his shipments were billed to him with bills of lading attached; that suits were filed against him on accounts past due; that he is now compelled to pay cash; that appellant is 65 years of age, practically blind, and as a proximate and natural result of the refusal of appellee to lend him further sums of money as agreed, appellant has lost in weight and has been subjected to great mental strain, and worry, and physical and mental suffering, all to his damage as herein set out, in the sum of $10,000.

Appellee demurred to this counterclaim upon the grounds that it does not state facts sufficient to constitute a cause of action against it, and filed memoranda therewith raising: (1) That the matter stated in the counterclaim did not arise out of and is not connected with appellee's cause of action; (2) that any agreement between the parties was cancelled and abandoned by reason of the fact that appellant alleges in his counterclaim that appellee refused to lend him any further money unless he put up stock in his corporation as collateral, and that said stock was put up; so, if there was ever any agreement to lend appellant $10,000, such agreement was abandoned and appellant is estopped to set up the same; (3) that appellant alleges that upon other occasions than at the time the note sued upon was given appellee agreed to lend him further money, but that these transactions are not connected with and do not arise out of the transaction in connection with the notes sued upon; (4) that any damages suffered by appel-

lant did not result from the default of the appellee, and the failure of appellee to keep its agreement to lend him further money was not the proximate cause of the damages which the appellant alleges; (5) that the damages alleged to have been suffered were not such as were contemplated by the parties at the time of making the agreement, and did not arise out of, or result from appellee's alleged breach of contract; (6) that the damages set out in the counterclaim are not such as could be recovered for the alleged breach of the contract herein; (7) that the contract, if any, was made for the benefit of appellant's corporation, and any loss would be the loss of the corporation, and there is no such showing in the pleading.

This demurrer was sustained to this eighth paragraph of counterclaim, and also to the fifth and sixth, to which appellant duly excepted.

Appellee has not furnished us with a brief, so, under the rule as laid down by this court, appellant is entitled to a reversal upon a prima facie showing of reversible error. *Hueseman* v. *Neaman* (1933), 97 Ind. App. 586, 187 N. E. 696.

Appellant discusses the four assignments of error; namely, the sustaining of the appellee's demurrer to the fifth, sixth, and eighth paragraphs of counterclaim, and striking out a portion of the sixth paragraph of counterclaim. There was no reversible error in striking out portions of the sixth paragraph of counterclaim, as all matter stricken out could be proved under the other paragraphs, and said paragraph is good as against a demurrer without the portion so stricken out. These three paragraphs of counterclaim are similar, and allege substantially the same facts, and present the same question.

We have considered the error assigned upon the overruling of the demurrer to the eighth paragraph of

counterclaim as this raises the same questions as raised under the other paragraphs. We think this paragraph of counterclaim alleges facts sufficient to constitute a cause of action against appellee, and that the court erred in sustaining the demurrer thereto, and that none of the objections stated in the memoranda are well-taken. Although some of the damages alleged in the counterclaim may be remote, the question of the remoteness of damages would naturally arise as to the admission of evidence upon the trial, and can be controlled by the trial court at that time. This paragraph sufficiently alleges a binding contract between appellant and appellee whereby appellee agreed to lend to appellant $10,000 as appellant might need it for the purpose of manufacturing and marketing certain articles. The general rule regarding damages arising out of a contract of this character was laid down by our Supreme Court in the case of *Lowe* v. *Turpie et al.* (1896), 147 Ind. 652, 670, 44 N. E. 25, 47 N. E. 150, wherein the court says:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e. according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

The question arises, Is this contract one in which damages caused by a breach thereof may reasonably be supposed to have been in contemplation of both parties at the time it was made?

The cause of action shown by the facts set forth in the counterclaim arises out of the same transaction as

set forth in the complaint. It is alleged in the counterclaim that the appellee, after having been advised by the appellant of the uses for which he wanted to borrow this money, agreed to lend not to exceed $10,000 to appellant for the purpose of making and marketing his devices; that appellee was acquainted with the transaction and purpose for which appellant wanted this money, and entered into this agreement with a full understanding of the circumstances. Appellee knew that appellant, through his corporation, intended to invest this money and use it in the making and marketing of these articles, and the purposes of the loan, and that damages might result from a breach thereof, and knew that appellant relied upon appellee's agreement to lend him an amount not to exceed $10,000 for this purpose. It was within the contemplation of the parties at the time of making the agreement that the breach thereof and failure to lend appellant this money would cause obligations upon and damage to appellant, such as pleaded in the counterclaim. There is ample consideration alleged for the contract, and sufficient allegations of damage to withstand a demurrer.

While some of the elements of damages alleged may be remote, there are allegations of damage in the counterclaim which appellant is entitled to attempt to prove. The breach of the contract having been due to the fault of appellee, as alleged in the counterclaim, appellant's profits for the future might be recovered provided they could be proved with reasonable certainty. Whether appellant can adequately prove actual future profits, we cannot say, but he is entitled to try to prove them. *Allied Silk Manufacturers, Inc.* v. *Ernstein et al.* (1915), 153 N. Y. S. 976. The question of the remoteness of the damages might arise upon the admission of the evidence

under the pleading, but it does not rise here upon demurrer to the counterclaim, where damages are alleged that are proper.

This counterclaim fairly alleges a valid contract, its breach on the part of appellee, and consequent damages flowing therefrom, which could have been reasonably contemplated by the parties at the time contract was made.

The measure of damages for breach of contract to lend money is usually the difference between the contract interest rate, and the increased interest rate the borrower is obliged to pay in procuring it elsewhere, but where special damages are alleged, that were within the contemplation of the parties when making the contract and arise out of the breach thereof, they may be shown. It is alleged in this counterclaim that appellant obtained part of this loan and invested it in the enterprise, and that upon the refusal of appellee to make any further loans in accordance with the agreement, appellant was unable to secure the money elsewhere, although he made repeated efforts so to do. On this question of the measure of damages, the Supreme Court of Nebraska, in the case of *Shurtleff* v. *Occidental Building and Loan Ass'n.* (1921), 105 Neb. 557, 181 N. W. 374, said:

> "The measure of damages for a breach of a contract to lend money is usually, as announced by the trial court, the difference between the contract interest rate and the increased interest rate the borrower is obliged to pay in procuring a new loan. There are certain exceptions to this rule, one of which is that, where it appears that the specific purpose for which the loan was made was communicated to the lender at the time the contract was entered into, and where it further appears that the borrower has suffered special damages by the breach, which are pleaded and proved, the damages recoverable are such as may fairly and reasonably be supposed to have been in the contempla-

tion of the parties at the time of making the contract, as the probable result of a breach of it."

Many of the courts of this country, including our own state, cite and quote with approval from the leading English case of *Hadley v. Baxendale* (1854), 9 Exch. (Eng.) 341, 354, which lays down the general rule for damages for breach of contract. The rule is also stated in 8 Ruling Case Law, page 464, §31; also, 17 Corpus Juris, page 865.

Further authorities upon the validity of the contract in question and the right to recover damages for its breach may be found in the following cases: *Gallemore v. Buzzard* (1924), 98 Okla. 104, 224 Pac. 293; *Pugh v. Jackson* (1913), 154 Ky. 649, 157 S. W. 1082; *Merchants' Bank of Canada v. Sims et al.* (1922), 122 Wash. 106, 209 Pac. 1113; *Spiese v. Mutual Trust Co. et al.* (1917), 258 Penn. 422, 102 Atl. 121.

We think this paragraph of counterclaim is sufficient to withstand the demurrer and fairly states a cause of action against appellee, and that appellant has made a prima facie showing of reversible error. What we have said about the eighth paragraph of counterclaim applies with equal force to the fifth and sixth paragraphs. The court erred in sustaining the demurrer to the fifth and sixth and eighth paragraphs of counterclaim.

The judgment is hereby reversed, and the lower court ordered to grant a new trial herein and to overrule the demurrers to each of the fifth, sixth, and eighth praragraphs of appellant's counterclaim.