Andrew R. ORTO and James Stewart, a Partnership d/b/a Com–Lux Builders, Appellants (Plaintiffs below),

v.

Hubert F. JACKSON and Violet A. Jackson, Husband and Wife et al., Appellees (Defendants below).

No. 3–180A12.

Court of Appeals of Indiana, Fourth District.

Dec. 4, 1980.

Daniel G. Hoebeke, William J. Muha, Highland, for appellants.

Rhett L. Tauber, Merrillville, for appellees.

CHIPMAN, Judge.

Andrew Orto and James Stewart, d/b/a Com-Lux Builders contracted to build a house for Hubert and Violet Jackson. The home contained numerous defects and the Jacksons refused to pay the builders the agreed contract price. The builders brought suit to foreclose their mechanic's lien and the Jacksons counterclaimed for damages. The trial court ordered a foreclosure but also awarded various damages to the Jacksons and the builders appeal. We affirm.

The builders have raised the following issues: Whether the trial court erred when it found:

1. The builders liable for rent the Jacksons paid due to the house not being completed within the agreed time;

2. The builders liable for breach of an express guarantee, implied warranty of habitability, and negligent construction;

3. The builders liable for the defective septic system; and

4. The builders liable for compensatory damages.

## FACTS

In June 1976 the builders agreed to build Jacksons' home for $46,550.00. The contract prepared by the builders, was signed by the parties and contained the following provisions:

"7. The Seller [builders] agrees to diligently prosecute the construction to a conclusion, unless prevented by acts of the Buyer [Jacksons] or his agents, acts of God, including, without limitation, inclement weather, strikes, boycotts, fire of incendary origin or otherwise, war or national emergency and by scarcity of labor and building materials.

11. Seller guarantees all materials and workmanship for a period of one year from the acceptance by the Buyer, normal wear and tear, acts of God and negligent acts of the Buyer exempted.

13. Sellers agree to complete construction 90 days after start of construction." (This provision was handwritten into the contract at the request of Mr. Jackson.)

Construction began on the Jacksons' house in early August 1976. In November 1976 the Jacksons sold the home in which they were living. Their new home was not substantially completed until late April of 1977, and they moved into it in early May. The trial court found the Jacksons sold their home in reliance upon paragraph 13 above and also upon an oral promise made in early November by Stewart that the Jacksons would be in their home before Thanksgiving or he would reimburse them for their rental expenses. The trial court awarded the Jacksons $1,548.00 in damages for rent they paid on their house. The rent was $258.00 per month from November of 1976 to April of 1977 inclusive.

Inclement weather did not occur until after the 90 day construction time period mentioned in paragraph 13 had expired. Although no finding was made as to the

reason for the construction delay, Orto testified he had a full time job at Inland Steel and therefore he did not work full time on the Jacksons' house.

A few days after the Jacksons moved into their new home, they experienced numerous plumbing leaks and sewage from the septic system leaked into the basement. A problem also arose concerning the basement wall buckling in, but this was satisfactorily remedied by the builders. The plumbing leaks were fixed but the septic problem was never solved. After being contacted by the Jacksons, Orto came out and attempted to correct the problem. He had a plumber connect the septic system to the house, which had never been done, and had the septic tank pumped out twice. Finally Orto had a hole dug in the back yard near one of the drainage laterals and filled it with two truck loads of stone in an attempt to relieve some of the pressure on the system. At trial Orto admitted this merely removed the sewage problem from the basement and transferred it to the back yard where a cesspool quickly formed on the surface of the yard.

In June of 1977, the builders and Jacksons met in the builders' attorney's office where Orto was informed the sewage problem still existed, the evidence is not clear whether the Jacksons asked Orto to correct other defects they had discovered but the evidence is undisputed that Orto never returned to remedy the septic problem.

On July 26, 1977, the builders filed this foreclosure action and the Jacksons counterclaimed. (The additional parties named as defendants were other lien holders who were dismissed prior to trial.) After the suit was filed, communication ceased between the parties as each side instructed the other to "see my attorney."

Between May and October of 1977 the Jacksons experienced additional problems with the house. The trusses used to support the floor were faulty which caused the interior of the house to sag and separated some of the walls from the ceiling. The roof and basement both leaked and the gutters fell off the house in the spring of 1978.

The Jacksons paid most of the subcontractors bills and were given credit for these payments by the trial court which found the Jacksons owed the builders $14,884.80 plus $3,560.00 in attorney's fees and ordered a foreclosure. Additionally the court found the builders owed the Jacksons $1,548.00 for rent paid by the Jacksons, $3,500.00 to replace the septic system, $1,500.00 to repair the defective trusses and the resulting damage, and $3,500.00 as compensation for the substantial aggravation and inconvenience they were caused by the numerous defects. The court found the builders breached their express guarantee, their implied warranty of habitability, and constructed the house in a negligent manner.

## I. RENT

■ The builders argue they should not have been found liable for rent paid by the Jacksons since the construction contract did not specifically make time of the essence and since the contract did not set forth any penalty provisions for failure to meet the 90 day provision. In effect the builders are asking the court to ignore the 90 day contract provision. Instead, they contend the court should look to the intention of the parties at the time the contract was signed and argue the Jacksons were then under no obligation to sell their house. The builders cite *Burnett Coal Mining Co. v. Schrepferman*, (1929) 77 Ind.App. 45, 133 N.E. 34 for the proposition time is not regarded as being of the essence to a contract unless it is affirmatively so stated. In *Burnett*, one of the parties was seeking an injunction and the court said at page 38, "time was not made [of] the essence of the contract, and *in equity*, unless it affirmatively appears that it was so regarded by the parties, the court will not so regard it." (emphasis added)

The Jacksons respond by distinguishing *Burnett* from their action at law for breach of contract by arguing in the latter type of action, time is to be considered of the essence, citing *Ohio Valley Buggy Co. v. An-*

*derson Forging Co.*, (1907) 168 Ind. 593, 81 N.E. 574, 577.

"In answer to the insistence that the time fixed for payments by appellant for each installment of goods sold and furnished is not of the essence or substance of the contract, it may be said that this principle is not applicable to the case at bar, for it is well settled that it is only in equity or chancery cases where this rule is regarded and applied. This case is an action at common law to recover damages for the breach of the contract herein involved. At common law time is of the essence of a contract, and the performance, at the time fixed or prescribed, of the conditions or stipulations therein by the contracting party upon whom such duty rests, is indispensable unless waived by said party."

We agree with the Jacksons. The 90 day time limit, inserted at the Jacksons' request, clearly made time of the essence in terms of the remedy sought in this case. This contract provision was breached and the trial court correctly awarded damages to the Jacksons for the rent they were required to pay due to the breach.

## II. BREACH OF WARRANTY

■ The builders attack the trial court's award of $1,500.00 for the defective trusses and $3,500.00 for compensatory damages on the ground they were not given notice of all the defects complained of by Jacksons and therefore they could not be found liable for them according to *Wagner Construction Co., Inc. v. Noonan*, (1980) Ind.App., 403 N.E.2d 1144. *Wagner* held before a builder could be found liable for breach of implied warranty of habitability, the homeowner must notify the builder of the defect and allow him reasonable time to repair it.

Notwithstanding the trial court's additional bases for awarding damages of breach of express guarantee and negligent construction, we feel the trial court properly awarded these damages under the theory of breach of implied warranty of habitability. The facts show that the builders did repair some of the defects in the house prior

to filing this suit, the buckling basement walls, some of the plumbing leaks, and the improperly cut doors. Other defects, of which the builders had notice, remained unremedied. The septic system functioned improperly from the first week of occupancy until this case was tried. In addition, the Jacksons notified the builders, through discovery, that the flooring trusses were defective and the basement walls leaked after heavy rains but these problems were never repaired. Lastly, the fallen gutters and the leaking roof were repaired by the Jacksons before ever notifying the builders of these problems. Under a strict reading of *Wagner*, the Jacksons should not be awarded damages for the latter two defects since they did not give the builders notice of the defects and a reasonable time to repair them. But, in light of the course of conduct taken by the builders with regard to the septic system, we feel the Jacksons may properly be awarded damages for the leaking roof and faulty gutters.

The *Wagner* court sets out the policy reasons behind requiring homeowners to give notice of defects to builders prior to recovering damages for them. Notice of the defects allow a builder an opportunity to repair the defects, thus reducing his damages, helps the builder avoid the same defects in the future and encourages settlement. In this case the evidence shows once the builders filed this suit, they had no intention of remedying any more defects in the house as indicated by their failure to remedy the septic system. Likewise the builders did not show any interest in determining why the septic system failed to function properly in hopes of avoiding similar problems in the future. Additionally, settlement was attempted in this case prior to the filing of this action, but it obviously proved unsuccessful. Under these facts, the Jacksons were not required to give notice of the defective roof and gutters as a precondition to recovering damages for them since giving such notice would serve no purpose.

## III. THE SEPTIC SYSTEM

■ The faulty septic system was installed by Monte Davis, a subcontractor. Since

he too had filed a notice of intent to hold a mechanic's lien against Jacksons, he was named as a defendant by the builders in their complaint. Davis then filed a cross-claim and a counterclaim against the buyers and the builders respectively, for approximately $2,100.00 plus attorney's fees. Prior to trial, the buyers settled with Davis for $1,300.00 after having first received the court's approval. The settlement was "in full satisfaction [of] undisputed amounts due Monte Davis ...." In return Davis accepted the $1,300.00 "in full satisfaction of all amounts due it for the balance of work it performed ..." and released his mechanic's lien and dismissed his suits against the Jacksons and the builders. The motion seeking the court's approval stated the settlement was not prejudicial to the interests of any of the parties. A hearing was held on this motion and the builders, having received notice, failed to attend the hearing and made no objection to the proposed settlement.

The builders now argue the settlement entered into by Davis and the Jacksons was in effect a release and by releasing the servant Davis, the master, Com-Lux Builders, was also released, citing an A.L.R. annotation on respondeat superior and *Cooper v. Robert Hall Clothes, Inc.*, (1979) Ind., 390 N.E.2d 155. Additionally, the builders contend there is "no testimony which suggests any independent, faulty work on the part of the plaintiffs [builders] themselves," therefore they could only have been found liable for the faulty septic system by having Davis' substandard work imputed to them. This argument is both factually and legally incorrect. Assuming arguendo the document filed with the court was a release, or more correctly an accord and satisfaction serving as a release, the builders were still properly found liable for the faulty septic system.

The facts clearly show Orto, who testified he had no idea how septic systems worked, negligently created a cesspool in the Jacksons' back yard. Based on this independent act of negligent construction alone, the trial court could have found the builders liable for the septic system problems and a judg-

ment of a trial court will be affirmed on appeal if sustainable on any basis. *Ertel v. Radio Corporation of America*, (1976) Ind. App., 354 N.E.2d 783. Secondly, the builders' liability also arose from their express one year guarantee. The builders guaranteed their work, which included the work of their subcontractors. This guarantee was breached and resulted in the builders' liability. Lastly, if the builders were prejudiced at all by this accord, they could have voiced their objection at the hearing on the matter, or they could have interpleaded Davis under Ind. Rules of Procedure, Trial Rule 22 for liability for the faulty septic system.

In conjunction with their release argument the builders also attack the $3,500.00 damage award by arguing the Jacksons had failed to meet their burden of proving why the septic system was defective. No authority is cited for this proposition and we do not feel the Jacksons were required to meet such a burden. The builders expressly guaranteed all of their materials and workmanship for one year, normal wear and tear, acts of God, and negligent acts excepted. The evidence is overwhelming that the septic system never functioned properly despite limited use of the water facilities in the house. Under these circumstances the Jacksons only had to prove the septic system was defective. If the builders believed the system failed due to negligent acts or an act of God, they had the burden of proving these acts. They did not introduce any evidence to indicate the failure was due to any act of God or act of negligence on the part of the Jacksons and they were properly found liable for the defective septic system.

## IV. COMPENSATORY DAMAGES

The trial court found the Jacksons "have incurred substantial aggravation and inconvenience as a result of the plaintiffs' [builders'] breach of their express guaranty [sic] under the contract of June 4, 1976, their breach of implied warranty of habitability and their negligent construction of the home. In addition to

the expenses incurred and as compensatory damages for the above, the defendants [Jacksons] are entitled to recover the amount of Three Thousand Five Hundred Dollars ($3,500.00) on their counterclaim." The builders allege the trial court erred in its computation of this compensatory damage award by failing to apply the proper measure of damages. They cite *Springer v. Jones*, (1919) 76 Ind.App. 269, 123 N.E. 816, 817 for the proposition that "the measure of damages for breach of a construction contract is the reasonable cost of altering the defective parts of the house so as to make them conform to the plans and specifications."

■ While correctly stating the proper measure of one element of damages for a breach of a construction contract, this passage does not embody the entire remedy available to the party suffering from the breach. In addition to the above allotted amounts, the injured party is entitled to receive damages for delays as discussed in section I, for economic loss resulting from the breach of the contract (and in this case also from the breach of implied warranty of habitability) *Horsley v. Slough*, (1972) 151 Ind.App. 123, 277 N.E.2d 919, *Barnes v. Mac Brown and Company, Inc.*, 264 Ind. 227, 342 N.E.2d 619, for the loss of full use and enjoyment of property occasioned by the breach, *Jay Clutter Custom Digging v. English*, (1979) Ind.App., 393 N.E.2d 230,[1] and for the probable cost of future repairs, *Horsley, supra.*

■ The evidence is undisputed, Mr. Jackson personally did a great deal of work on his house correcting numerous defects and obtaining others to do the work he was unable to do. He procured the materials and constructed a temporary solution to the problem of defective trusses. He reattached the gutters, paid to have the roof leaks repaired and spent hours cleaning the basement after numerous leaks. With the exception of the set–off allowed for the materials used to correct the trusses problem, the Jacksons were not compensated for any of the above expenses or labor by any of the other amounts awarded in this case. The evidence is also undisputed that for over two years the Jacksons have suffered the partial loss of use and enjoyment of their basement, which still leaks after heavy rains, and the total loss of use and enjoyment of their back yard due to the cesspool located there. A party injured by a breach of contract is entitled to receive damages that may reasonably be considered to have arisen naturally from the breach or as may reasonably have been in contemplation of the parties at the time they entered the contract as a probable result of its breach. *Strong v. Commercial Carpet Co., Inc.*, (1975) 163 Ind.App. 145, 322 N.E.2d 387, *Doddridge v. American Trust & Savings Bank*, (1934) 98 Ind.App. 334, 189 N.E. 165. The aggravation and inconvenience suffered by the Jacksons certainly arose naturally from the builders' breach of the contract and it could hardly be said that these damages were not in the parties' minds at the time they entered the contract.

Although we agree with the builders that the trial court should have awarded these consequential damages more specifically, we do not feel this error is sufficient ground to reverse its decision. As long as a damage award is susceptible of ascertainment in a manner other than mere speculation, we will not require mathematical certainty as to all elements of damages. *Jay Clutter Custom Digging v. English, supra.* If the damage award is within the scope of the evidence, the determination of damages is within the sound discretion of the trial court. *Ogle v. Wright*, (1977) Ind.App., 360 N.E.2d 240. We find no abuse of discretion here.

"A fundamental rule of damages applicable to breach of contract cases is that the party injured by the breach is limited

---

1. We realize the loss of use suffered by the Jacksons was not the total loss of use involved in *Jay Clutter Custom Digging v. English, supra* but we do not find this difference controlling.

In this case the measure of damages would be the reduced rental value of the property as opposed to the full rental value of the property.

in recovery to the loss actually suffered; he is not entitled to be placed in a better position than he would have been if the contract had not been broken." (citation omitted)

*Jay Clutter Custom Digging v. English,* (1979) Ind.App., 393 N.E.2d 230, 234. Based on the facts as found by the trial court, we seriously doubt the Jacksons were placed in a better position after the awarding of these damages than they would have been had the contract not been breached.

The judgment of the trial court is affirmed.

YOUNG, P. J., and MILLER, J., concur.