**LIBERTY MUTUAL INSURANCE COMPANY, Appellant (Defendant Below),**

v.

**Mary Ann PARKINSON, Appellee (Plaintiff Below).**

**No. 4-1083A352.**

Court of Appeals of Indiana, Fourth District.

Dec. 30, 1985.

Edward N. Kalamaros, Thomas Cohen, South Bend, for appellant.

Charles A. Asher, South Bend, J. William Davis, Jr., Goshen, for appellee.

YOUNG, Presiding Judge.

Mary Ann Parkinson sued Liberty Mutual Insurance Company for bad faith in settling her claim for damages caused by an uninsured motorist. The trial court awarded her $2,000 in compensatory and $40,000 in punitive damages. On appeal, Liberty Mutual raises several issues which we have rephrased as follows:

1) whether the settlement agreement released all claims against appellant;

2) whether Indiana recognizes bad faith of an insurance company in settling a claim with its insured as an independent tort;

3) whether awarding compensatory damages was contrary to law; and

4) whether awarding punitive damages was contrary to law.

We affirm.

The dispute between Parkinson and Liberty Mutual arose after Parkinson's car was struck in the rear by a hit-and-run driver as she waited at a stop sign. Parkinson reported the accident to her insurance company, Liberty Mutual, and inquired as to her coverage and what effect a claim might have on her insurance rates. The claims representative told Parkinson that her rates would go "sky high" if she filed a claim; the representative also stated that her policy would not cover the cost of a rental car while Parkinson's automobile was being repaired.

As a consequence of this conversation, Parkinson did not file a claim with Liberty Mutual. Instead, she retained an attorney to bring suit against the hit-and-run driver. She also moved into her parents' home so that they could provide transportation to work until she could afford to purchase another car. Unfortunately, she was unable to locate the hit-and-run driver who had been driving a stolen vehicle. Parkinson eventually consulted her present attorney, who informed her that the uninsured motorist provisions of her insurance policy should have covered most of her losses from the accident. After Parkinson's attorney contacted Liberty Mutual and demanded payment, the parties settled the uninsured motorist claim for $3,116.83 and the claim for damage to her car for $2,982.50. The settlement release forms executed by the parties provided that Parkinson reserved the right to proceed against Liberty Mutual for dealing with her in bad faith in processing her claim. Parkinson brought the instant action and was awarded judgment in her favor. Liberty Mutual now appeals.

Initially, Parkinson maintains that Liberty Mutual has preserved no error for appeal as Liberty's motion to correct errors lacked specificity. Liberty Mutual's motion to correct errors consisted of the following allegations of error:

1) that the decision is not supported by sufficient evidence;

2) that the decision contains uncorrected errors of law;

3) that the decision is contrary to law. The motion incorporated by reference a seventeen-page memorandum in support specifically addressing each alleged error. Parkinson argues that this motion to correct errors was inadequate to preserve error for review.

■ Indiana Rules of Procedure, Trial Rule 59(B) requires that the statement of claimed errors in a motion to correct errors be specific rather than general and be accompanied by a statement of facts and grounds upon which error is based. To determine whether the requirement of specificity has been met, the motion should be read together with its supporting memorandum. *Stevenson v. Manners* (1985), Ind., 477 N.E.2d 847; *Leist v. Auto Owners Insurance Company* (1974), 160 Ind. App. 322, 311 N.E.2d 828. When read in conjunction with its supporting memorandum, Liberty Mutual's motion to correct errors amply fulfills the specificity requirements of T.R. 59(B) and preserved the errors alleged for review.

■ Liberty Mutual then argues that its settlement agreement with Parkinson released all claims against the company. Appellant's argument is specious. *See Lazarrus v. Employers Mutual Casualty Co.* (1977), 173 Ind.App. 452, 364 N.E.2d 140. The settlement agreement explicitly provided:

This 'Release and Trust Agreement' does not constitute a waiver of Mary Ann Parkinson's right, which she expressly reserves, to make claim against, sue, and collect from Liberty for all acts and omissions constituting a breach of Liberty's contractual and fiduciary obligations to her, including attorney fees and compensation for all losses and punitive damages. This 'Release and Trust Agreement' satisfies only the liability that Liberty has for the uninsured motorist coverage of the above policy.

Next, appellant claims that Parkinson's suit was premised upon the tort of bad faith, a cause of action not cognizable in Indiana court. Parkinson's well-researched and cogent argument, on the contrary, maintains bad faith of an insurer in dealing with its insured has been adopted as a tort by many jurisdictions [1] and that many other states have legislated into insurance contracts the common law duty of good faith and fair dealing, with remedies including various combinations of compensatory and punitive damages.[2] *See generally* ASHLEY, BAD FAITH ACTIONS: LIABILITY AND DAMAGES, § 1:01, 2:02 (1984).

■ Indiana has long recognized that there is a legal duty implied in an insurance contract that the insurer must deal in good faith with its insured. *Vernon Fire & Casualty Insurance Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173; *Riverside Insurance Co. v. Pedigo* (1982), Ind.App., 430 N.E.2d 796; *Rex Insurance Co. v. Baldwin* (1975), 163 Ind.App. 308, 323 N.E.2d 270; *Sexton v. Meridian Mutual Insurance Co.* (1975), 166 Ind.App. 529, 337 N.E.2d 527. This duty is breached when an insurer fails to settle a claim that could not in good faith be disputed. *See*

---

1. See, for example *Noble v. National American Life Ins. Co.* (Ariz.1981), 128 Ariz. 188, 624 P.2d 866; *Kranzush v. Badger State Mut. Cas. Co.* (1981), 103 Wis.2d 56, 307 N.W.2d 256; *Safeco Ins. Co. of America v. Kartsone* (C.D.Calif.1981), 510 F.Supp. 856; *Bibeault v. Hanover Ins. Co.* (R.I.1980), 417 A.2d 313; *Rainbow Trucking, Inc. v. Ennia Ins. Co.* (E.D.Pa.1980), 500 F.Supp. 96; *South Carolina Ins. Co. v. Pensacola Home*

*& Savings Assoc.* (Fla.1981), 393 So.2d 1124, 1126.

2. See, for example M.C.L.A. §§ 500.3142, 500.-3148 (Michigan); Ga.Code, § 56–3406(b) (Georgia); Ark.Stats. § 66–3238 (Arkansas); S.C.Code, § 38–9–320 (South Carolina); L.S.A.–R.S. 22:614, 22:213, 22:657 (Louisiana); 75 P.S. § 1716 (Pennsylvania); and K.R.S. 304.39–210(1) (Kentucky).

*generally Vernon, supra; Riverside, supra.* Furthermore, although punitive damages are generally not recoverable in contract actions, our courts have allowed the recovery of punitive damages when the insurer's breach is accompanied by an independent tort or where a serious wrong of a tortious nature was committed and the public interest would be served by the deterrent effect of punitive damages. *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349; *Vernon, supra.* Due to our development of this special contractual remedy which affords the insured a more generous measure of damages, we have found no reason to adopt bad faith as an independent tort in this state and we see no need to adopt such an action now.

Liberty Mutual next claims the award of compensatory damages was contrary to law. Essentially, appellant contends the eventual settlement of Parkinson's claim under her insurance policy fully compensated her for all losses.

The record reveals that Liberty Mutual had paid the plaintiff the sum of $3,116.83 in satisfaction of her uninsured motorist claim. As evidenced by Charles Asher's letter dated October 27, 1980, the $3,116.83 is broken down as follows in Defendant's Exhibit B, p. 44 and 37:

| | |
|---|---:|
| Rental of Car | $ 720.00 |
| Lost Wages | 150.00 |
| Medical Expenses | 207.75 |
| Personal Injury | 1,000.00 |
| Attorney's Fees | 1,038.88 |
| | $3,116.83 |

In addition, Parkinson received the sum of $2,982.50 for damage to her automobile.

■ Although appellant may have settled with Parkinson for all benefits due under the policy, Parkinson did not receive all she was due under the contract. The contract contained a promise, implied in law, that Liberty Mutual would deal fairly with her in the settlement of any claim. Liberty Mutual breached this term of the contract by discouraging Parkinson from filing a claim that could not in good faith be disputed. Thus, Parkinson was entitled to compensation for the breach, including

damages for the delay in the settlement of her claim, an item that was not included in the settlement agreement.

Appellant also attacks the award of compensatory damages on the basis that prejudgment interest and attorney fees were improperly included in the award. In its findings of fact, the trial court noted:

... Liberty did not pay any attorney fees, prejudgment interest, compensation for dislocation to Mary Ann's personal life by delay in properly handling her case, alleged breach of its duty of good faith and fair dealing.

Among Mary Ann's other alleged losses following Liberty's failure to make these payments within a reasonable time after the accident were the following: Mary Ann was forced to operate without an automobile until June, 1980, when she was able to afford a substitute automobile; Mary Ann left her own separate residence and moved in with her parents between February, 1980 and June, 1980, as a direct result of not having an automobile of her own; and pre-judgment interest between February, 1980 and December, 1980.

At the end of its judgment for Parkinson the trial court generally awarded compensatory damages of $2,000.

There is no indication from the trial court's judgment that attorney fees or interest were, in fact, awarded. No evidence of attorney fees was introduced and no computation of legal interest was made. Moreover, the court made no reference to interest or attorney fees in its general damage award. We cannot assume from such evidence that attorney fees and interest were included. Thus, we perceive no error.

■ As to appellant's claim that the award of $2,000 as compensatory damages is contrary to law, we also find no error. If a damage award is within the scope of the evidence, the determination of damages is within the sound discretion of the trial judge. *Orto v. Jackson* (1980), Ind.App., 413 N.E.2d 273. The evidence indicated that Parkinson was without a car for sever-

al months and had to arrange transportation to work with friends and family. An award of $2,000 for the inconvenience of being without a car for several months when she was clearly entitled to have her car repaired and a rental car in the interim under the terms of her policy is certainly reasonable. *See id.* at 278 (injured party entitled to damages for delay in performing contract); *see also Craft v. Economy Fire & Casualty Co.* (7th Cir.1978), 572 F.2d 565 (applying Indiana law). Moreover, as long as a damage award is susceptible of ascertainment in a manner other than mere speculation, we will not require mathematical certainty as to all elements of damage. *Orto, supra* at 278. The trial court did not abuse its discretion in awarding compensatory damages of $2,000.

Finally, Liberty Mutual contends punitive damages should not have been awarded for two reasons: Parkinson did not prove any actual damages and Liberty Mutual's conduct did not constitute fraud, malice or oppression.

As appellant correctly notes, no punitive damages may be awarded in the absence of compensatory damages. *Large v. Gregory* (1981), Ind.App., 417 N.E.2d 1160. As we decided above, however, Parkinson did prove and was entitled to recover compensatory damages. Liberty Mutual's argument on this point must fail.

As to appellants second argument, both in the trial court and on appellate review an award of punitive damages for breach of an insurance contract must be established by clear and convincing proof. *Travelers Indemnity*, 442 N.E.2d 349. That proof must demonstrate that the breach was accompanied by an independent tort, or that a serious wrong of a tortious nature mingled in the breach and the public interest would be served by the deterrent effect of punitive damages. *Id.*

The record reveals that Parkinson visited the offices of Liberty Mutual shortly after the accident to inquire as to her coverage under her policy. The claims representative dissuaded her from filing a claim stating that Parkinson's premiums would go "sky high" if she filed a claim under her policy. The claims representative also told Parkinson that her policy would not reimburse the cost of a rental car while her car was being repaired. The evidence also indicated that Liberty Mutual does not train its claims representatives in interpreting policy coverage and that the company instructs them never to admit coverage or volunteer information about a policy to the policyholder.

There may be a sound business reason for not educating claims representatives as to policy coverage and instructing them never to volunteer coverage information. At a minimum, however, a claims representative should assist a policyholder in filing a claim. That was not done in this case. Indeed, not only was Parkinson unassisted in filing a claim, she was given incorrect information regarding her coverage. Moreover, she was actively dissuaded from filing a claim that was clearly covered under her policy. The use of "scare tactics" by an insurance representative to discourage the filing of claims cannot be condoned. Such actions are certainly clear and convincing evidence of oppression and justify the imposition of punitive damages. As another court explained in *Egan v. Mutual of Omaha Insurance Co.* (1976), 24 Cal.3d 809, 620 P.2d 141, 169 Cal.Rptr. 691:

> The insurers' obligations are ... rooted in their status as purveyors of a vital service labeled quasi-public in nature. Suppliers of services affected with a public interest must take the public's interest seriously, where necessary placing it before their interest and maximizing gains and limiting disbursements.

The trial court did not err in awarding punitive damages.

Liberty Mutual cites *Penwell v. Western & Southern Life Insurance Co.* (1985), Ind.App., 474 N.E.2d 1042, for the proposition that an insurance representative has no duty to advise the insured as to the coverages afforded by his policy. Appellant misstates the law of the case. The court in *Penwell* states with approval a federal decision which holds that an insur-

ance agent does not have an affirmative duty to contact the insured to which he sold the policy to inform him of his policy coverage in the case of disability. Furthermore, the *Travelers* decision specifically provided that while an insurer is not bound to be correct in its interpretation of the policy, the insurer does have a duty to refrain from making fraudulent representations and to act in good faith. 442 N.E.2d 349, 364. An insured should not have to retain an attorney in order to recover a claim which the insurer could not in good faith dispute.

The trial court's judgment is affirmed.

BUCHANAN, C.J., and MILLER, J., concur.