



FILED

Feb 11 2026, 9:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

John Sayre and Sam the Concrete Man,

*Appellants-Defendants*

v.

Lee Trost,

*Appellee-Plaintiff*

---

February 11, 2026

Court of Appeals Case No.
25A-PL-1007

Appeal from the Hamilton Superior Court

The Honorable Darren J. Murphy, Judge

Trial Court Cause No.
29D07-2302-PL-001958

---

**Opinion by Judge Brown**

Judge Scheele concurs.
Judge Felix dissents with separate opinion.

**Brown, Judge.**

[1] John Sayre and Sam the Concrete Man (collectively, "Contractors") appeal the judgment of the trial court in favor of Lee Trost. We affirm.

## Facts and Procedural History

[2] On June 15, 2022, Contractors and Trost entered into a contract via email pursuant to which Trost agreed to pay $14,850 to Contractors for installing a 795-square-foot concrete patio at Trost's Carmel, Indiana, residence. The email indicates that the patio was supposed to have a base color as well as "Bluestone Texture and release color." Exhibits Volume IV at 116. The email does not elaborate on the colors and textures the parties agreed upon, the materials to be used, or a start and finish date for the project. The contract itself does not provide any of these details, but it does state that the project "should be completed within 3 to 5 days." *Id.* at 120.

[3] On June 27, Contractors installed the north side of the patio and two sets of stairs. Due to a scheduling error with the concrete trucks, the south side of the patio could not be installed the same day. On July 11, Contractors installed the south side of the patio. The north and south sides of the patio turned out to be different colors, with the north side having a beige tone and the south side having a grey tone. From there, the parties engaged in a months-long back and

forth about potential solutions before finally agreeing to have Contractors repour the south side of the patio, which occurred on October 31. This fix proved to be more of a problem than the original color issue. The layout of the south end was not confirmed before the new work began, the corners of the south end of the patio were repoured incorrectly, and the control joints did not line up with the north end. To make matters worse, the color issue remained.

[4] On December 6, Contractors repoured the north side of the patio and steps. Two days later, Contractors removed some sealant splatter and told Trost that they would return at a later date to finish removing it. On December 29, Contractors removed more of the splatter, and Trost emailed Contractors with a list of defects, including that the corners were poured incorrectly, and a ¼-inch height difference between the north and south sides, the finish on the stairs was sloppy at the edges and patchy, the patio had mismatched colors, a drain had been damaged in the yard, and there was still splatter on the fence and sealant on the residence. On January 3, 2023, Contractors informed Trost that he had not notified them of these defects within five days of the date they completed work on his patio. On January 27, Contractors filed a lien on Trost's real estate for $7,425, of which Trost received notice three days later. On February 27, Trost sued Contractors for breach of contract, negligence, and violations of Indiana's Home Improvement Contracts Act.[1]

---

[1] Ind. Code §§ 24-5-11-1 to -14.

On March 1, 2024, the court held a bench trial. Both Trost and Sayre testified, and the trial court determined that Trost's testimony and evidence was more credible than Sayre's. The court concluded that Contractors were liable to Trost based on the breach of contract and negligence claims but not under the Home Improvement Contracts Act. The court awarded Trost $19,961 in damages. Contractors filed a motion to correct error, which the court denied. This appeal ensued.[2]

## Discussion

We will find the trial court's decision to be clearly erroneous if the facts do not support the findings or the court applies the wrong legal standard. *In re R.L.*, 144 N.E.3d 686, 689 (Ind. 2020). We will not reweigh the evidence or judge witness credibility, and we consider only the evidence and reasonable inferences that support the trial court's decision. *In re Ma.H.*, 134 N.E.3d 41, 45 (Ind. 2019), *cert. denied*, 140 S. Ct. 2835 (2020). For issues not covered by the findings, we apply our general judgment standard, meaning we should affirm based on any legal theory supported by the evidence. *Dep't of Nat. Res. v. Leonard*, 226 N.E.3d 198, 202 (Ind. 2024).

---

[2] Both parties fail to include all relevant facts in the Statement of Facts section of their briefs, as required by Ind. Appellate Rule 46(A)(6). Not only did the parties not include all relevant facts in their Statements of Facts, but they also did not include some relevant facts in their briefs at all. The trial court's thorough order in this case filled in many of the gaps left by the parties' briefing. We remind both parties that the purpose of our appellate rules—especially Appellate Rule 46 governing the content of briefs—"is to aid and expedite review and *to relieve the appellate court of the burden of searching the record and briefing the case.*" *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023) (emphasis added) (quoting *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021)).

[7] Contractors argue that the trial court's conclusions are contrary to law and against the weight of evidence, that, "[w]here the source of a party's duty to another arises from a contract, 'tort law should not interfere,'" Appellant's Brief at 7-8 (citing *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012) (quoting *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003), *reh'g denied*), *reh'g denied*, *trans. denied*), and that, "even if Trost could point to some deficiency in his concrete patio, it makes no logical sense to award an essentially double to treble damage award to fund a 'tear-out-and-replace' when the concrete patio is usable to the homeowner and the homeowner is enjoying utility value from at least having a patio." *Id*. at 8. They also argue the court applied an incorrect measure of damages and Trost is not entitled to be placed in a better position than he would have been had the contract not been broken.

[8] The trial court found:

> Trost contends he was damaged by [Contractors'] breaches of the exercise of reasonable care while preforming [sic] home improvements in the amounts of $7,425 for the deposit, $200 for pressur[e] washing and drain replacement, $836.00 for removal of the concrete, [and] $11,500 to replace the concrete. A tear out is the only way to fix. An overlay will not bond correctly. Staining won't work or last. The concrete has to be removed and replaced.

Appellant's Appendix Volume II at 36. The court also found, "Trost's property is devalued because the work needs to be redone at a higher cost." *Id*. at 41.

Generally, when parties have arranged their respective risks of loss, tort law should not interfere. *Greg Allen*, 798 N.E.2d at 175. However, the Indiana Supreme Court has held:

> In *Greg Allen*, we noted . . . that "[While] [t]he issue is . . . sometimes framed as whether the [tort] duty arises solely from contract[,] . . . [p]utting the issue in terms of the source of the duties . . . is largely tautological." 798 N.E.2d at 174-175. Rather, "[a] defendant's exposure to tort liability is best framed in terms of what the defendant did. . . . To the extent that a plaintiff's interests have been invaded beyond mere failure to fulfill contractual obligations, a tort remedy should be available." *Id.* at 173.

*U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 748 (Ind. 2010).

Damages are awarded to compensate an injured party fairly and adequately for the loss sustained. *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003) (citing *Bader v. Johnson,* 732 N.E.2d 1212, 1220 (Ind. 2000)), *trans. denied.* In negligence actions, the injured party is entitled to damages proximately caused by the tortfeasor's breach of duty. *Id.* A party injured by a breach of contract may recover the benefit of the bargain. *Id.* The damages claimed for such a breach must be the natural, foreseeable, and proximate consequence of the breach. *Id.* While an aggrieved party must be compensated, he or she should not be placed in any better position. *Id.* The proper measure of damages must be flexible enough to fit the circumstances. *Bader*, 732 N.E.2d at 1220.

[11]     In *Orto v. Jackson*, 413 N.E.2d 273 (Ind. Ct. App. 1980), this Court addressed damages for breach of a construction contract and negligent construction. In that case, the trial court found that the Jacksons (the homeowners) "incurred substantial aggravation and inconvenience" as a result of the builders' breach of contract and negligent construction and were entitled to compensatory damages. *Orto*, 413 N.E.2d at 277-278. The builders argued that the trial court failed to apply the proper measure of damages and that "the measure of damages for breach of a construction contract is the reasonable cost of altering the defective parts of the house so as to make them conform to the plans and specifications." *Id*. at 278 (citation omitted). This Court held:

> While correctly stating the proper measure of one element of damages for a breach of a construction contract, this passage does not embody the entire remedy available to the party suffering from the breach. In addition to the above allotted amounts, the injured party is entitled to receive damages for delays . . . , for economic loss resulting from the breach of the contract . . . , for the loss of full use and enjoyment of property occasioned by the breach . . . , and for the probable cost of future repairs[.]

> The evidence is undisputed, Mr. Jackson did a great deal of work on his house correcting numerous defects and obtaining others to do the work he was unable to do. . . . [He] spent hours cleaning the basement after numerous leaks. . . . The evidence is also undisputed that for over two years the Jacksons have suffered the partial loss of use and enjoyment of their basement, which still leaks after heavy rains, and the total loss of use and enjoyment of their back yard due to the cesspool located there. A party injured by a breach of contract is entitled to receive damages that may reasonably be considered to have arisen naturally from the breach or as may reasonably have been in contemplation of the parties at the time they entered the contract as a probable result of its breach.

The aggravation and inconvenience suffered by the Jacksons certainly arose naturally from the builders' breach of the contract and it could hardly be said that these damages were not in the parties' minds at the time they entered the contract.

Although we agree with the builders that the trial court should have awarded these consequential damages more specifically, we do not feel this error is sufficient ground to reverse its decision. As long as a damage award is susceptible of ascertainment in a manner other than mere speculation, we will not require mathematical certainty as to all elements of damages. If the damage award is within the scope of the evidence, the determination of damages is within the sound discretion of the trial court. We find no abuse of discretion here.

> A fundamental rule of damages applicable to breach of contract cases is that the party injured by the breach is limited in recovery to the loss actually suffered; he is not entitled to be placed in a better position than he would have been if the contract had not been broken.

*Jay Clutter Custom Digging v. English*, 393 N.E.2d 230, 234 (Ind. Ct. App. 1979). Based on the facts as found by the trial court, we seriously doubt the Jacksons were placed in a better position after the awarding of these damages than they would have been had the contract not been breached.

*Id.* at 278-279 (citations and quotation marks omitted).

[12] Here, the trial court issued a 23-page order containing 115 numbered paragraphs of findings and conclusions outlining in detail Contractors' deficient work installing the patio, their negligent supervision of crew members and subcontractors, their apparent delay tactics, and their repeated unfulfilled promises over many months to fix their work deficiencies. The court found that, while the parties' agreement called for the work to be done within three to

five days of the start date, "[a]lmost two years after the contract began, Trost's concrete patio is not complete" and "[t]here's still slag on the steps, flaking on steps needing repairs, concrete not cleaned off a fence, a drainpipe not repaired, two trip hazards over ¼ inch, a problematic radius of 9 inches, etc." Appellant's Appendix Volume II at 36. Contractors at various times conditioned repours on Trost agreeing to sign a non-disclosure agreement and on the payment of additional funds. The court concluded that Contractors "should have supervised their subcontractors and fixed their errors." *Id*. at 40. The court stated it "lacks faith that [Contractors] will complete the project based on their previous attempts and the passage of almost two years since work began." *Id*. at 41. The court found that "[a] tear out is the only way to fix" and "[t]he concrete has to be removed and replaced." *Id*. at 36. The court also found that "Trost's property is devalued because the work needs to be redone at a higher cost." *Id*. at 41. The court found, with respect to Trost's tort claim, that Contractors' "breach has cost Trost damages near $20,000." *Id*. at 44. In its order denying Contractors' motion to correct error, the court found that Trost "is not in a better position because he spent attorneys fees, and still does not have the patio," "there is no windfall," and "there is evidence in the record to support the damages." *Id*. at 52-53.

[13] Trost is entitled to receive the benefit of the bargain he made with Contractors, and Trost gave a $7,425 deposit to Contractors and he must now have the patio removed as well as his drain and fence repaired. While Trost is not entitled to be placed in a better position, we will affirm on any basis supported by the

evidence and he is entitled to damages he incurred as discussed in *Orto* including damages for delays, the loss of full or partial use and enjoyment of his property, and any devaluation of his property as a result of Contractors' actions. We will not require mathematical certainty as to all elements of damages, and if the damage award is within the scope of the evidence, the determination of damages is within the sound discretion of the trial court. *See Orto*, 413 N.E.2d at 278. Based on the record and the court's findings, we cannot say that the trial court's award of damages is not within the evidence, and like in *Orto*, "we seriously doubt [Trost was] placed in a better position after the awarding of these damages than [he] would have been had the contract not been breached." *See id*. at 279.

[14] For the foregoing reasons, we affirm the judgment of the trial court.

[15] Affirmed.

Scheele, J., concurs.

Felix, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT

Jeffrey K. Eicher
Greenfield, Indiana

ATTORNEY FOR APPELLEE

Julie A. Camden
Camden & Meridew, P.C.
Fishers, Indiana

**Felix, Judge, dissenting.**

[16] I respectfully dissent. Contractors were liable for only breach of contract based on the plain language of the trial court's order, and the trial court should not have awarded Trost the replacement value of the patio.

### 1. The Trial Court Erred by Entering Judgment in Favor of Trost on His Negligence Claim

[17] Contractors argue that the trial court erred by concluding they are liable for both breach of contract and negligence. Regarding Trost's breach of contract claim, the trial court determined that Contractors materially breached their agreement with Trost in at least four ways: (1) "they did not complete the job in the 3-5 days set out in the agreement due to the incorrect scheduling of concrete truck arrival times"; (2) "they poured two mismatched colors of concrete"; (3) "in attempting to fix the color issue, [they] repoured the wrong color"; and (4) "they wanted to provide a partial refund instead of fixing their sloppy and defective work." Appellants' App. Vol. II at 41. Concerning Trost's negligence claim, the trial court determined that Contractors "had a duty *under the contract* to work skillfully and in a workmanlike manner" and that they breached this duty. *Id.* at 43 (emphasis added).

[18] "Where the source of a party's duty to another arises from a contract, 'tort law should not interfere.'" *JPMCC 2006–CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012) (quoting *Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003)), *trans. denied*. A separate claim

for negligence is available in a contractual relationship only when the "plaintiff's interests have been invaded beyond mere failure to fulfill contractual obligations." *Id.* (quoting *Greg Allen Const.*, 798 N.E.2d at 173).

[19] Here, the trial court explicitly concluded that Contractors' duty to Trost arose "under the contract," Appellants' App. Vol. II at 41, and the trial court did not otherwise determine that Trost's interests had been invaded beyond Contractors' failure to fulfill their contractual obligations. The trial court therefore erred by entering judgment in favor of Trost on his negligence claim.

## 2. The Trial Court Erred by Awarding Trost the Replacement Cost of the Patio

[20] Contractors also contend the trial court erred in awarding damages because it awarded more than the amount of Trost's deposit. "A party injured by a breach of contract is limited in its recovery to the loss actually suffered and may not be placed in a better position than the party would have enjoyed had the breach not occurred." *Derr Enters., LLC v. Union City Ind. Props., LLC*, 253 N.E.3d 1129, 1135 (Ind. Ct. App. 2025) (alteration omitted) (quoting *Ind. Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 368 (Ind. Ct. App. 2008)), *trans. not sought*. The damage award "must be based upon some fairly defined standard, such as cost of repair, market value, established experience, rental value, loss of use, loss of profits, or direct inference from known circumstances." *L.H. Controls, Inc. v. Custom Conveyor, Inc.*, 974 N.E.2d 1031, 1043 (Ind. Ct. App. 2012) (citing *Fowler v. Campbell*, 612 N.E.2d 596, 603 (Ind. Ct. App. 1993)). Moreover, "[c]onsequential damages may be awarded on a breach of contract

claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made." *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 31 (Ind. 1999) (citing *W. Union Telegraph Co. v. Biggerstaff*, 177 Ind. 168, 97 N.E. 531 (1912)). Consequential damages are generally limited to "reasonably foreseeable economic losses." *Id.* The injured party has the burden of proving damages with "reasonable certainty." *Derr Enters.*, 253 N.E.3d at 1135 (quoting *Ash*, 895 N.E.2d at 368).

[21]    Before installing the patio, Contractors quoted Trost a total price of $14,850, and Trost gave Contractors a deposit of $7,425. Connor Brown, who had been working in the concrete industry for five years, testified that the only solution for Trost's patio would be to tear it out and redo it, which would cost between $10,000 and $15,000. One of Contractors' own exhibits shows that another concrete company believed the patio and steps to be "not at all acceptable" and "[t]he trip hazard alone warrants *removal* of the patio." Tr. Vol. IV at 142 (emphasis added). Trost testified that a contractor had estimated it would cost $11,500 to install a new patio with a broom finish, and it would cost $1 per square foot to remove the existing patio. Trost also testified that he wanted his $7,425 deposit back plus damages for fixing the pipe and fence, which he "estimate[d]" would cost "a couple hundred dollars," Tr. Vol. II at 100. In addition, Trost stated that although he and his wife enjoy hosting events at their house, they cannot use the patio because it presents a tripping hazard for their young children and their older family members. According to Trost, the patio "is pretty much just a big paper weight." *Id.* at 97.

The trial court found that the patio "has to be removed and replaced" with a removal cost of $836 and a replacement cost of $11,500. Appellants' App. Vol. II at 36. The trial court also found that it would cost Trost $200 to repair the drain that Contractors damaged and to remove the splatter from his fence. Furthermore, the trial court made the following relevant findings concerning Trost's breach of contract claim:

> 95. . . .
>
>> - Trost would be injured without the patio being repoured in a proper workmanlike manner.
>>
>> - Trost did not get the benefit anticipated by the agreement.
>
>> \* \* \*
>
>> - Trost can be compensated with damages for the lack of complete performance through a money judgment to allow them to hire a replacement contractor to remove the work performed inadequately by [Contractors] and replace with properly poured and stained concrete.
>
>> \* \* \*
>
>> - . . . Additionally, the concrete remains on the Defendant's property. To repair it properly, the concrete must be torn out and replaced. The existing concrete, with its visual and construction defects, is likely to decrease rather than increase the value of Trost's property.

96. Trost's property is devalued because the work needs to be redone at a higher cost.

*Id.* at 39–41.  The trial court awarded Trost $19,961 in damages.

[23]  In denying Contractors' motion to correct error, the trial court entered the following relevant findings:

7.  [Trost] currently has no benefit and is out $7425.

 * * *

9.  In this case, [Trost] is not in a better position because he spent attorneys['] fees, and still does not have the patio.

10.  While the contract calls for attorneys['] fees, there were none awarded.

11.  As such, there is no windfall.

Appellant's App. Vol. II at 52.  The trial court also broke down its damages award as follows:

| | | |
|---|---|---|
| Deposit | $ | 7,425 |
| Drain and Fence Repairs | $ | 200 |
| Patio Removal | $ | 836 |
| Patio Replacement | $ | 11,500 |
| TOTAL | $ | 19,961 |

[24]     This damages award results in a partial windfall to Trost. Trost is entitled to receive the benefit of the bargain he made with Contractors, who have repeatedly demonstrated their inability or unwillingness to ensure that occurs. Trost has not received any benefit from the $7,425 deposit he gave to Contractors, and he must now have the patio removed as well as his drain and fence repaired due to Contractors' errors. However, Trost is not entitled to have his patio replaced for free because that would place him in a better position than he would have enjoyed had Contractors not breached the agreement. *See Derr Enters.*, 253 N.E.3d at 1135 (quoting *Ash*, 895 N.E.2d at 368); *Crider & Crider, Inc. v. Downen*, 873 N.E.2d 1115, 1118–19 (Ind. Ct. App. 2007) (limiting damages to lost trade-in value rather than repair costs because plaintiffs traded in damaged equipment). While Trost is entitled to his deposit, the cost of repairs, and the cost to remove the poorly poured patio, he is not entitled to have Contractors pay for a whole new patio. Accordingly, the trial court did not clearly err by awarding Trost his deposit, the cost of repairs, and the cost to remove the existing patio; the trial court did clearly err by awarding Trost the cost to replace the patio.

[25]     This is not to say that Trost is not entitled to consequential damages. If Trost proved with reasonable certainty that he suffered reasonably foreseeable economic losses as a result of Contractors' breach, then he is entitled consequential damages.

## Conclusion

In sum, the trial court erred by determining that Contractors were liable due to negligence, and it erred in awarding Trost damages as explained above.  I would affirm the trial court's judgment on Trost's breach of contract claim; reverse its judgment on Trost's negligence claim; and remand with instructions for the trial court to redetermine damages, including any consequential damages Trost may have proven with reasonable certainty.